UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| American Alliance for Equal Rights, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> American Bar Association, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 25-cv-3980 |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT'S MOTION TO DISMISS**

The American Bar Association ("ABA")—the world's largest voluntary association of lawyers and legal professionals—has a stated goal of eliminating bias and enhancing diversity in the legal profession. In furtherance of that goal, the ABA operates a number of programs and opportunities for lawyers and law students, including the Legal Opportunity Scholarship Fund ("LOSF"), which provides scholarship funds to law students from underrepresented backgrounds. Plaintiff, the American Alliance for Equal Rights ("AAER"), incorrectly believes that such programs constitute race-based discrimination in violation of 42 U.S.C. § 1981.

As explained herein, AAER's claim suffers from multiple fatal deficiencies. First, as a threshold matter, AAER lacks standing to pursue its claim because it has failed to allege that it has a member who would have standing to pursue the § 1981 claim on his or her own behalf. Second, AAER fails to allege the existence of a contractual relationship, as required to maintain a § 1981 claim. And third, the First Amendment bars AAER's claim. Accordingly, AAER's single-count complaint should be dismissed.

1

## BACKGROUND

AAER alleges that it is a nationwide membership organization founded in 2021 with the purpose of "ending all classifications and preferences based on race and ethnicity." ECF No. 1 ("Compl.") ¶¶ 5–6. Apparently in furtherance of that purpose, AAER seeks to challenge LOSF, claiming that the scholarship violates § 1981 by discriminating on the basis of race in the making and enforcing of a contract. *Id.* ¶¶ 33–44.

The ABA was founded in 1878 on a commitment to set the nation's legal and ethical foundation and exists today as a membership organization committed to its mission of defending liberty and pursuing justice.[1] The ABA's work centers on serving its members, improving the legal profession, eliminating bias and enhancing diversity, and advancing the rule of law throughout the United States and around the world.[2] The ABA also develops model uniform standards for the legal profession, including the Model Rules of Professional Conduct[3] and the ABA Criminal Justice Standards[4], and accredits law schools.

As part of its efforts to eliminate bias and enhance the diversity of the legal profession, the ABA each year awards approximately 20-25 first-year law students with a $15,000 scholarship

---

[1] *See* American Bar Association, "About Us," https://www.americanbar.org/about_the_aba/ (last accessed June 13, 2025). The Court may properly consider the contents of the ABA's website because AAER quotes portions of the website and relies on them in its complaint. Compl. ¶¶ 12–19. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (on motion to dismiss, court may consider "documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice").

[2] *See* American Bar Association, "About Us," https://www.americanbar.org/about_the_aba/ (last accessed June 13, 2025).

[3] *See* American Bar Association, "Model Rules of Professional Conduct," https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/ (last accessed June 13, 2025).

[4] *See* American Bar Association, "Criminal Justice Standards," https://www.americanbar.org/groups/criminal_justice/resources/standards/ (last accessed June 13, 2025).

2

through the LOSF program. *Id.* ¶¶ 10–11.[5] The scholarship has certain eligibility requirements, namely: the applicant must be an entering, first-year law student in the upcoming academic year; the applicant must have achieved a minimum cumulative grade-point average of 2.5 (on a 4.0 scale) at his or her undergraduate institution; the applicant must demonstrate admission to, and plans to enroll at, an ABA-accredited law school; and the applicant must be a member of an underrepresented racial and/or ethnic minority.[6] *Id.* ¶ 12. The 2025 LOSF application cycle closed on April 15, 2025. *Id.* ¶ 13.

To apply for the scholarship, students must submit their application materials through a portal. *Id.* ¶ 14. The required application materials include a personal statement, official or unofficial transcript, letters of recommendation, and a signed release form that allows the ABA to use the applicant's name and other identifying information in ABA materials. *Id.* ¶ 15.

According to AAER, the LOSF eligibility criteria are discriminatory because of the requirement that applicants be a member of an underrepresented racial and/or ethnic minority. *Id.* ¶¶ 18–20. AAER claims that it has members who are harmed by the allegedly discriminatory eligibility criteria, including "Member A." *Id.* ¶¶ 21–22. AAER alleges that Member A plans to be a first-year law student in Fall 2025 and that he has been accepted to an ABA-accredited law

---

[5] *See also* American Bar Association, "Legal Opportunity Scholarship," https://www.americanbar.org/groups/diversity/diversity_pipeline/projects_initiatives/legal_opportunity_scholarship/ (last accessed June 13, 2025).

[6] On April 3, 2025, nine days before AAER filed this lawsuit, the Board of Governors of the ABA passed a resolution providing in part that ABA programs and opportunities related to the ABA's Goal III (eliminating bias and enhancing diversity) "shall not base eligibility for participation on particular group identities and, instead, shall base eligibility on a person's demonstrated commitment to Goal III." *See* American Bar Association, "ABA Board of Governors passes diversity resolution," https://www.americanbar.org/news/abanews/aba-news-archives/2025/04/aba-bog-diversity-resolution/ (last accessed June 13, 2025). The ABA is in the process of reviewing its programs, including LOSF, to ensure consistency with this resolution. Accordingly, some or all aspects of AAER's claim may become moot once this review is complete. *See, e.g., Freedom From Religion Found., Inc. v. Franklin Cnty., Ind.*, 133 F. Supp. 3d 1154, 1158–60 (S.D. Ind. Sept. 23, 2015) (dismissing plaintiff's claims as moot where there was no reasonable expectation that allegedly unconstitutional activity would recur).

3

school. *Id.* ¶ 23. AAER further states that Member A has financial need and satisfies all of the eligibility requirements for LOSF, except that he is not a member of an underrepresented racial or ethnic minority because he is white. *Id.* ¶¶ 25–27. According to AAER, although Member A has not applied for LOSF, he is ready and able to do so and has gathered the necessary application materials. *Id.* ¶¶ 28–31.

Based on these allegations, AAER claims the ABA's administration of LOSF violates § 1981 by excluding white students from its eligibility criteria. *Id.* ¶¶ 33–44. AAER asserts that the LOSF application implicates § 1981 because applicants must sign a release form, and because LOSF is a "contest." *Id.* ¶ 38. AAER seeks declaratory, injunctive, and equitable relief, as well as nominal damages and costs and fees. *Id.* ¶ 45.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) should be granted where the allegations of a plaintiff's complaint, even if accepted as true, fail to establish that the plaintiff has standing to pursue the claims asserted. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). Likewise, dismissal is appropriate under Rule 12(b)(6) when the complaint fails to state a facially plausible and legally valid claim for relief—that is, where it fails to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A court need not accept as true legal conclusions, conclusory statements, or threadbare recitals of the elements of a claim. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

4

**ARGUMENT**

I.     **AAER Lacks Standing To Pursue Its Claim.**

As a threshold matter, the Court should grant the ABA's motion to dismiss because AAER lacks standing to pursue its § 1981 claim. "All plaintiffs, including organizations, seeking to invoke federal jurisdiction must have standing." *Freedom from Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008). To establish standing, a plaintiff must demonstrate an actual or imminent injury in fact; that the injury likely was caused or will be caused by the defendant's actions; and that the injury likely would be redressed by the requested judicial relief. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). Mere ideological objections "do not establish a justiciable case or controversy in federal court." *Id.* at 396.

AAER does not have standing to pursue its § 1981 claim on its own behalf because AAER does not, and cannot, allege any injury to its organization stemming from the administration of LOSF. Instead, AAER seeks to pursue its claim on behalf of its members (*see, e.g.,* Compl. ¶¶ 21–22), invoking associational standing.

There are three criteria for demonstrating associational standing: (1) the organization's members must otherwise have standing to sue in their own right; (2) the interests the organization seeks to protect must be germane to its purpose; and (3) neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Here, AAER fails to allege that it has a member who has standing to sue in his or her own right.

As noted above, AAER's complaint identifies a single individual whom it identifies as "Member A." Compl. ¶ 21. And AAER's allegations make clear that Member A did *not* apply for LOSF. *Id*. ¶¶ 30–31 (alleging Member A "could have and would have" applied before the

5

April 15 deadline and "would apply" if AAER obtains its requested relief). Accordingly, to have standing, AAER must sufficiently allege that Member A is "able and ready" to apply to LOSF. *Carney v. Adams*, 592 U.S. 53, 60 (2020).

Whether a plaintiff is "able and ready" to apply for a position is a legal determination, and to satisfy it, AAER must demonstrate that Member A was likely to apply in the reasonably foreseeable future, if not for the allegedly discriminatory criteria. *Id.* at 60, 63. Relevant factors courts consider in making this determination include whether the plaintiff contemporaneously expressed an interest in applying, whether the plaintiff applied for or availed himself or herself of similar opportunities in the past, whether the plaintiff knows or has attempted to learn of similar opportunities in the present, whether the plaintiff took steps to prepare or submit an application, and whether the plaintiff's actions "suggest 'a desire to vindicate [the plaintiff's] view of the law' rather than pursue the underlying opportunity." *Spitalnick v. King & Spalding, LLP*, 2025 WL 608013, at *5 (D. Md. Feb. 25, 2025) (quoting *Carney*, 592 U.S. at 62).

In *Spitalnick*, the plaintiff alleged that a law firm's diversity summer program violated § 1981 and Title VII by discriminating against white and heterosexual applicants. 2025 WL 608013, at *1–2. The court dismissed the plaintiff's claims for lack of standing, concluding that the plaintiff had failed to sufficiently allege an injury-in-fact because she did not allege she applied to the program and failed to allege facts that she was "able and ready" to do so. *Id.* at *5. The court noted that the plaintiff had failed to allege that she took steps toward applying, that she had a history of applying to similar positions, or that she applied to similar positions—instead, she merely alleged an "interest" in the position. *Id.* In reaching its conclusion that the plaintiff's allegations fell short of what is required to demonstrate standing for purposes of a motion to dismiss, the *Spitalnick* court relied on the Supreme Court's decision in *Carney*, 592 U.S. 53.

6

In *Carney*, the plaintiff sought to challenge a state constitutional provision requiring judicial appointments to "reflect a partisan balance." 592 U.S. at 55. However, the plaintiff failed to establish that he was "able and ready" to apply for a judgeship where he stated that he "would" apply but had failed to previously apply for judgeships or undertake other preparations or investigations to apply. *Id.* at 63. Being "able and ready" requires more than a statement of "general intent"—a plaintiff must "differentiate[] himself from a general population of individuals affected in the abstract by the legal provision he attacks." *Id.* at 64; *see, e.g., Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) (contractors established that they were "able and ready to bid on [future] contracts" where they regularly bid on similar contracts and would have bid on the contracts at issue, were they so able). That is because "bare assertion[s] of harm" that are "unsupported by any concrete details" fail to "satisfy the constitutional requirement of a concrete and particularized injury-in-fact." *Nowlin v. Pritzker*, 34 F.4th 629, 633 (7th Cir. 2022) (affirming dismissal of complaint for lack of standing).

Member A's actions, as alleged in the Complaint, fall short of meeting the "able and ready" standard. The Complaint contains no allegations that Member A expressed any interest in applying for LOSF, including by contacting the ABA to inquire about the opportunity or simply submitting the information he had compiled. It contains no allegations that Member A has applied for other scholarship opportunities in the past or that he is attempting to avail himself of similar opportunities at present. Instead, AAER simply alleges that Member A "researched scholarships" but "had trouble finding any" suitable opportunities. Compl. ¶ 24.

And while AAER alleges that Member A compiled the materials necessary to submit an LOSF application (*id.* ¶ 29), most—if not all—of those materials would already have been necessary for Member A to compile to apply to law school. For example, by AAER's own

7

admission, the ABA permits LOSF applicants to re-use letters of recommendation from their law school applications. *Id.* ¶ 15. Absent allegations that Member A took any concrete steps to express his interest in, or apply to, LOSF, the Complaint contains little more than "words of general intent" that fall short of establishing an "intent [to apply] that is concrete." *Carney*, 592 U.S. at 64. Taken altogether, the allegations of the Complaint reflect a "desire to vindicate" a particular "view of the law," rather than a genuine desire to pursue LOSF. *Spitalnick*, 2025 WL 608013, at *5 (quoting *Carney*, 592 U.S. at 62).

Because AAER does not have standing to pursue its claim, the Complaint should be dismissed.

## II. AAER Fails To State A Claim Under 42 U.S.C. § 1981.

Even if AAER had standing, the Complaint should still be dismissed due to AAER's failure to state a § 1981 claim. Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." *Id.* § 1981(a). Accordingly, to state a claim under § 1981, a plaintiff must sufficiently allege the existence of a contractual relationship with the defendant. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475–76 (2006). AAER fails to do so here.

AAER alleges that LOSF "involves contracts" because applicants must sign a release form that grants the ABA the right to use applicants' names, voices, and (if selected) photographs, biographies, and excerpts from their scholarship applications. Compl. ¶¶ 15, 38. Additionally, AAER claims, the scholarship is a "contest," which is a "classic contract." *Id.* ¶ 38. AAER is wrong, and the complaint fails to allege the existence of a contractual relationship between LOSF applicants and the ABA.

8

The scholarships awarded through LOSF are discretionary gifts that do not confer any enforceable rights upon scholarship recipients, or any obligations on the ABA. LOSF scholarship recipients do not "exchange" anything with the ABA to receive the scholarship awards; rather, the awards are benefits that are voluntarily conferred by the ABA in furtherance of the organization's stated goals. LOSF recipients do not perform any services for the ABA in exchange for the funds received; the funds are provided to them to attend law school. None of AAER's allegations suggest otherwise, and none of the LOSF program materials AAER refers to in the complaint require applicants to perform any services for the ABA. *See generally id.* ¶¶ 12–19.

There is little case law addressing the applicability of § 1981 to awards or grants voluntarily conferred by private organizations, and the ABA is aware of no cases from within the Seventh Circuit that have extended § 1981 to this context. Instead, the majority of cases involve employment relationships, which courts within the Seventh Circuit have repeatedly concluded constitute "contracts" for purposes of § 1981. *See, e.g., Walker v. Abbott Labs.*, 340 F.3d 471, 476 (7th Cir. 2003) (reversing dismissal of § 1981 claim based on at-will employment relationship); *Descamps v. Chi. Housing Auth.*, 2025 WL 1222581, at *6 (N.D. Ill. Apr. 28, 2025) (denying motions to dismiss § 1981 claims based on employment relationship). And these employment cases highlight why the "contract" on which AAER relies is a poor fit for § 1981.

In the employment context, an employee promises to work for his or her employer, in exchange for the employer's promise to pay. *See, e.g., Walker*, 340 F.3d at 477 ("Illinois courts generally treat at-will employment relationships as contractual in nature.") (citations omitted). Here, by contrast, LOSF recipients do not perform any services to the ABA in exchange for the scholarship funds. Rather, the funds are provided to them to attend law school, in accordance with

9

LOSF's stated purpose of "encourag[ing] students from racial and ethnic minority groups that are traditionally underrepresented in the legal profession to attend law school." Compl. ¶ 19.

More broadly, case law is clear that where a complaint fails to allege an exchange of value with the defendant, it fails to state a claim under § 1981. For example, in *Adam v. Obama for America*, 210 F. Supp. 3d 979 (N.D. Ill. 2016), the court concluded that there was no contractual relationship between an unpaid intern and the organization where she worked. *Id.* at 985–86. The plaintiff contended that she agreed to perform work for the defendant organization in exchange for the prestige associated with the opportunity, and that the defendant allowed her access to this prestige in exchange for her agreement to perform the work. *Id.* at 986. However, the court explained, "since not all agreements are contracts," to state a claim, the plaintiff must allege that the defendant was induced to offer her the internship opportunity because of "some valuable skill or characteristic" that she "would have used to benefit [the organization] through her willingness to work"—which the plaintiff in *Adam* failed to do. *Id.*

Applying *Adam* to the allegations in this case makes clear that AAER's complaint is flawed in the same way. AAER does not allege that the ABA is *induced to* award scholarships to LOSF applicants *because* they have signed a release form granting the ABA the ability to use their names and other identifying information in limited circumstances. Instead, AAER merely alleges that the release form exists and is part of the application materials for LOSF. Compl. ¶¶ 15(c), 38. But this is insufficient to allege the existence of a contractual relationship between LOSF applicants and the ABA. Indeed, it strains credulity to suggest that the ABA awards $15,000 to students in exchange for the right to publish their names—particularly where AAER's own allegations make clear that the program is designed to award funds for a charitable purpose: to allow a more diverse

10

pool of students to attend law school with less financial strain. *Id.* ¶ 19 (citing LOSF's purpose and mission).

*American Alliance for Equal Rights v. Fearless Fund Mgmt., LLC*, 103 F.4th 765 (11th Cir. 2024), on which AAER relies in its complaint (Compl. ¶¶ 36–37), does not compel a different result. To begin, *Fearless Fund*, which was decided by a divided panel of the Eleventh Circuit, is not binding on this Court, and, for the reasons explained above, this Court should conclude that divided opinion was wrongly decided because the charitable grants at issue in that case, like the LOSF scholarships here, were discretionary gifts rather than the basis of a contractual relationship.

In any event, however, *Fearless Fund* is distinguishable from this case in multiple respects. For one thing, the contest rules at issue in *Fearless Fund* explicitly stated that applicants were agreeing to "A CONTRACT." 103 F.4th at 775. AAER alleges no such statement in the LOSF application materials at issue here, and indeed, there is none. Additionally, the applicants in *Fearless Fund* granted the defendant organization substantial rights, including the right to "use [their] ideas without any additional compensation." *Id.* at 770. Applicants also gave up the right to pursue any claims against the organization in court, instead agreeing to arbitration, and agreed to release and indemnify the organization for various liabilities. *Id.* The LOSF release form described in AAER's complaint contains no such language and merely grants the ABA the right to use certain identifying information in its own promotional materials. Compl. ¶ 15(c). Thus, *Fearless Fund* does not support AAER's position that the LOSF application materials form a contract with applicants.

AAER's cited cases regarding "contests" (*id.* ¶ 38) also do not support the application of § 1981 to the facts here. *Personavera, LLC v. College of Healthcare Information Management Executives*, 2021 WL 1313108 (E.D. Pa. Apr. 8, 2021) involved the cancellation of a contest for a

11

$1 million prize, for which the plaintiffs had already expended significant effort and resources and submitted a prototype that the defendant refused to return. *Id.* at *1, *4. And in *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001), the contract at issue was a retail purchase that included the receipt of a department store coupon redeemable for perfume samples. *Id.* at 1099–1101, 1103–05. Neither case involved a discretionary gift.

AAER fails to allege the existence of a contractual relationship that would bring LOSF within the scope of § 1981, and the Complaint should be dismissed.

### III. The First Amendment Bars AAER's Claim.

AAER's claim fails for the additional reason that the relief it seeks would impermissibly interfere with the ABA's First Amendment rights to free speech and expression.

The ABA has a First Amendment right to distribute funds as it deems appropriate, consistent with its organizational goals. Courts have repeatedly held that antidiscrimination laws cannot be used to compel an individual's or an organization's expressive conduct. *See, e.g., 303 Creative LLC v. Elenis*, 600 U.S. 570, 577–78 (2023) (Colorado antidiscrimination law could not be used to "compel an individual to create speech she does not believe"); *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 802–03 (9th Cir. 2022) (Oregon antidiscrimination law did not require private organization to include plaintiff in beauty pageant when doing so would force the organization to "express a message contrary to what it desires to express"); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021) (claim that Amazon violated Title II of the Civil Rights Act by denying participation in charitable program was properly dismissed because plaintiff's interpretation of the law "would violate the First Amendment by essentially forcing Amazon to donate to organizations it does not support"); *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F. Supp. 2d 986, 998–1000 (M.D. Tenn. 2012) (producer's casting decision

to limit the number of minority participants in reality television program was protected by First Amendment, defeating § 1981 claim).

So too, here. The ABA has a clearly defined goal of eliminating bias and enhancing diversity in the legal profession, as reflected in its publicly available materials published on its website.[7] In operating LOSF, the ABA strives to convey a message consistent with that goal: that it seeks to encourage students from traditionally underrepresented racial and ethnic backgrounds to apply to law school, and to provide financial assistance for them to do so. Compl. ¶ 19. This is expressive conduct that is protected by the First Amendment. *See Saadeh v. New Jersey State Bar Ass'n*, No. A-2201-22, 2024 WL 5182533, at *9–10 (N.J. Super. Ct. App. Div. Dec. 20, 2024).

*Saadeh*, which also involved expressive conduct by a voluntary association of lawyers, is instructive. There, the plaintiff claimed that the bar association's practice of reserving seats on its leadership bodies for members of historically underrepresented groups violated New Jersey's state anti-discrimination law. *Id.* at *1–2. The court disagreed, concluding that compelling the association to end this practice would "unconstitutionally infringe its ability to advocate the value of diversity and inclusivity in the Association and more broadly in the legal profession." *Id.* at *9. In determining that these interests were worthy of constitutional protection under the First Amendment, the court noted the association's "many forms of public expression and advocacy on matters of public concern, including the importance of diversity within . . . the legal community," such that compelling it to alter or eliminate its inclusion program would "significantly affect" the association's ability to advocate for its views. *Id.* at *9–10. Accordingly, the court concluded, the state's interest in eliminating discrimination, while compelling, did not justify a "severe intrusion"

---

[7] *See supra* note 1.

13

of "prohibiting the Association from expressing views protected by the First Amendment," including "the value of demographic diversity in the legal profession." *Id.* at *11.

Again, the same is true here. As AAER's own complaint acknowledges, the ABA is an advocate for diversity in the legal profession. *See, e.g.,* Compl. ¶¶ 19 (describing mission and purpose of LOSF), 20 (listing other examples of the ABA's commitment to diversity). It is the ABA's First Amendment right to express its views on this issue, and to engage in expressive conduct consistent with its views—including by awarding scholarship funds to LOSF participants. AAER's efforts to enjoin the LOSF program, obtain a declaration that it violates § 1981, and seek other relief, infringe on the ABA's protected First Amendment rights. Accordingly, AAER's Complaint should be dismissed.

## CONCLUSION

For the reasons stated herein, the ABA respectfully requests that the Court dismiss the Complaint in its entirety. Because AAER's claims are defective and cannot be revived, the dismissal should be with prejudice.

Dated: June 16, 2025

Respectfully submitted,

THE AMERICAN BAR ASSOCIATION

By: /s/ Joseph J. Torres
One of its attorneys

Joseph J. Torres
Katherine M. Funderburg
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
jtorres@jenner.com
kfunderburg@jenner.com

## **CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for Defendant, hereby certifies that on June 16, 2025, he caused a true and correct copy of the foregoing to be served via the Court's electronic filing system on:

Thomas R. McCarthy
Cameron T. Norris
Matt Pociask
R. Gabriel Anderson
Consovoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
matt@consovoymccarthy.com
gabe@consovoymccarthy.com

*Joseph J. Torres*

Joseph J. Torres
Katherine M. Funderburg
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
jtorres@jenner.com
kfunderburg@jenner.com

*Attorneys for Defendant*