UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| American Alliance for Equal Rights, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> American Bar Association, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 25-cv-3980 |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS**

The American Bar Association ("ABA")—the world's largest voluntary association of lawyers and legal professionals—has a stated goal of eliminating bias and enhancing diversity in the legal profession. In furtherance of that goal, the ABA operates various programs and opportunities for lawyers and law students, including the Legal Opportunity Scholarship Fund ("LOSF"), which provides scholarship funds to law students from underrepresented backgrounds. Plaintiff, the American Alliance for Equal Rights ("AAER"), incorrectly asserts that the LOSF program constitutes race-based discrimination in violation of 42 U.S.C. § 1981.

As explained herein, AAER's claim suffers from multiple fatal deficiencies. First, AAER lacks standing because it has failed to allege it has a member who would have standing to pursue the § 1981 claim in his or her own right. Second, AAER fails to allege the existence of a contractual relationship, as required to maintain a § 1981 claim. And third, the First Amendment bars AAER's claim. Accordingly, AAER's amended complaint should be dismissed.[1]

---

[1] After the ABA moved to dismiss AAER's initial complaint (ECF No. 17), AAER filed an amended complaint (ECF No. 19). The amended complaint contains additional factual allegations but fails to correct the deficiencies identified in the ABA's prior motion to dismiss.

1

**BACKGROUND**

AAER alleges that it is a nationwide membership organization founded in 2021 with the purpose of "ending all classifications and preferences based on race and ethnicity." ECF No. 19 ("Am. Compl.") ¶¶ 5–6. Apparently in furtherance of that purpose, AAER seeks to challenge LOSF, claiming that the scholarship violates § 1981 by discriminating on the basis of race in the making and enforcing of a contract. *Id.* ¶¶ 50–62.

The ABA is a membership organization committed to its mission of defending liberty and pursuing justice.[2] The ABA's work centers on serving its members, improving the legal profession, eliminating bias and enhancing diversity, and advancing the rule of law throughout the United States and around the world.[3]

As part of its efforts to eliminate bias and enhance diversity, the ABA each year awards approximately 20-25 first-year law students a $15,000 scholarship through LOSF. *Id.* ¶¶ 10–11.[4] The scholarship has certain eligibility requirements, namely: the applicant must be an entering, first-year law student in the upcoming academic year; the applicant must have achieved a minimum cumulative grade-point average of 2.5 (on a 4.0 scale) at his or her undergraduate institution; the applicant must demonstrate admission to, and plans to enroll at, an ABA-accredited law school;

---

[2] *See* American Bar Association, "About Us," https://www.americanbar.org/about_the_aba/ (last accessed July 29, 2025). The Court may consider the contents of the ABA's website because AAER quotes portions of the website and relies on them in its complaint. *See, e.g.,* Am. Compl. ¶¶ 12–21. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (on motion to dismiss, court may consider "documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice").

[3] *See* American Bar Association, "About Us," https://www.americanbar.org/about_the_aba/ (last accessed July 29, 2025).

[4] *See also* American Bar Association, "Legal Opportunity Scholarship," https://www.americanbar.org/groups/diversity/diversity_pipeline/projects_initiatives/legal_opportunity_scholarship/ (last accessed July 29, 2025).

and the applicant must be a member of an underrepresented racial and/or ethnic minority.[5] *Id.* ¶ 12. The 2025 LOSF application cycle closed on April 15, 2025. *Id.* ¶ 13.

To apply for the scholarship, students must submit their application materials through a portal. *Id.* ¶ 14. The required application materials include a personal statement, official or unofficial transcript, letters of recommendation, and a signed release form that allows the ABA to use the applicant's name and other identifying information in ABA materials. *Id.* ¶ 15. LOSF applicants are also enrolled in the ABA as free law student members. *Id.* AAER asserts that the ABA benefits from this information, and free student memberships, because it allows the ABA to generate additional revenue for itself and increase its reach when lobbying and litigating. *Id.* ¶ 16.

According to AAER, the LOSF eligibility criteria are discriminatory because of the requirement that applicants be a member of an underrepresented racial and/or ethnic minority. *Id.* ¶¶ 19–22. AAER claims that it has members who are harmed by the allegedly discriminatory eligibility criteria, including "Member A" and "Member B." *Id.* ¶¶ 25–26.

AAER alleges that Member A plans to be a first-year law student in Fall 2025 and that he has been accepted to and will be attending an ABA-accredited law school. *Id.* ¶ 28. AAER further states that Member B plans to apply to ABA-accredited law schools in the fall of 2025 and attend law school starting in the fall of 2026. *Id.* ¶ 39. According to AAER, Members A and B have

---

[5] On April 3, 2025, nine days before AAER filed this lawsuit, the ABA Board of Governors passed a resolution providing in part that programs related to the ABA's Goal III (eliminating bias and enhancing diversity) "shall not base eligibility for participation on particular group identities and, instead, shall base eligibility on a person's demonstrated commitment to Goal III." *See* American Bar Association, "ABA Board of Governors passes diversity resolution," https://www.americanbar.org/news/abanews/aba-news-archives/2025/04/aba-bog-diversity-resolution/ (last accessed July 29, 2025). The ABA is in the process of reviewing its programs to ensure consistency with this resolution. Some or all aspects of AAER's claim may become moot once this review is complete and the ABA has announced the requirements for LOSF's next cycle. *See, e.g., Freedom From Religion Found., Inc. v. Franklin Cnty., Ind.*, 133 F. Supp. 3d 1154, 1158–60 (S.D. Ind. Sept. 23, 2015) (dismissing plaintiff's claims as moot where there was no reasonable expectation that allegedly unconstitutional activity would recur).

3

financial need and satisfy (or will satisfy) the eligibility requirements for LOSF, except that neither of them is a member of an underrepresented racial or ethnic minority. *Id.* ¶¶ 30–32, 40, 42, 44. AAER alleges that although Members A and have not applied for LOSF, they are ready and able to do so and have gathered, or will gather, the necessary materials. *Id.* ¶¶ 33–35, 37, 41, 43, 45.

AAER claims the ABA violates § 1981 by excluding white students from LOSF's eligibility criteria. *Id.* ¶¶ 50–62. AAER asserts that the application implicates § 1981 because applicants sign a release form, and because LOSF is a "contest." *Id.* ¶ 55. AAER seeks declaratory, injunctive, and equitable relief, nominal damages, and costs and fees. *Id.* ¶ 63.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) should be granted where the allegations of a plaintiff's complaint, even if accepted as true, fail to establish that the plaintiff has standing to pursue the claims asserted. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). Likewise, dismissal is appropriate under Rule 12(b)(6) when the complaint fails to state a facially plausible and legally valid claim for relief—that is, where it fails to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A court need not accept as true legal conclusions, conclusory statements, or threadbare recitals of the elements of a claim. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

## ARGUMENT

**I.      AAER Lacks Standing To Pursue Its Claim.**

As a threshold matter, the Court should grant the ABA's motion to dismiss the amended complaint because AAER lacks standing to pursue its § 1981 claim. "All plaintiffs, including

organizations, seeking to invoke federal jurisdiction must have standing." *Freedom from Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008). To establish standing, a plaintiff must demonstrate an actual or imminent injury in fact; that the injury likely was caused or will be caused by the defendant's actions; and that the injury likely would be redressed by the requested judicial relief. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). Mere ideological objections "do not establish a justiciable case or controversy in federal court." *Id.* at 396.

AAER does not have standing to pursue its § 1981 claim on its own behalf because AAER does not, and cannot, allege any injury to its organization stemming from the administration of LOSF. Instead, AAER seeks to pursue its claim on behalf of its members (*see, e.g.,* Am. Compl. ¶¶ 25–26), invoking associational standing. There are three criteria for associational standing: (1) the organization's members must otherwise have standing to sue in their own right; (2) the interests the organization seeks to protect must be germane to its purpose; and (3) neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Here, AAER fails to allege it has a member who has standing to sue in his or her own right.

As noted above, AAER's complaint concerns two individuals identified as "Member A" and "Member B." Am. Compl. ¶ 25. And AAER's allegations make clear that neither Member A nor Member B has applied for LOSF. *Id.* ¶¶ 35, 37 (alleging Member A "could have and would have" applied before April 15 and "would apply" if AAER obtains its requested relief); *id.* ¶ 45 (alleging Member B "will gather all required materials" and apply for LOSF if AAER obtains the relief requested). Accordingly, to have standing, AAER must sufficiently allege that Member A or Member B is "able and ready" to apply to LOSF. *Carney v. Adams*, 592 U.S. 53, 60 (2020).

5

Whether a plaintiff is "able and ready" to apply for a position is a legal determination, and to satisfy it, AAER must demonstrate that Member A or Member B was, or is, likely to apply in the reasonably foreseeable future, if not for the allegedly discriminatory criteria. *Id.* at 60, 63. Relevant factors courts consider in making this determination include whether the plaintiff contemporaneously expressed an interest in applying, whether the plaintiff applied for or availed himself or herself of similar opportunities in the past, whether the plaintiff knows or has attempted to learn of similar opportunities in the present, whether the plaintiff took steps to prepare or submit an application, and whether the plaintiff's actions suggest "a desire to vindicate [the plaintiff's] view of the law" rather than to pursue the underlying opportunity. *Id.* at 60–64.

In *Carney*, the plaintiff sought to challenge a state constitutional provision requiring judicial appointments to "reflect a partisan balance." *Id.* at 55. However, the plaintiff failed to establish that he was "able and ready" to apply for a judgeship where he stated that he "would" apply but had failed to previously apply for judgeships or undertake other preparations or investigations to apply. *Id.* at 63. Being "able and ready" requires more than a statement of "general intent"—a plaintiff must "differentiate[] himself from a general population of individuals affected in the abstract by the legal provision he attacks." *Id.* at 64; *see, e.g., Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) (contractors established that they were "able and ready to bid on [future] contracts" where they regularly bid on similar contracts and would have bid on the contracts at issue, were they so able). That is because "bare assertion[s] of harm" that are "unsupported by any concrete details" fail to "satisfy the constitutional requirement of a concrete and particularized injury-in-fact." *Nowlin v. Pritzker*, 34 F.4th 629, 633 (7th Cir. 2022) (affirming dismissal of complaint for lack of standing).

Courts within the Seventh Circuit have relied on *Carney* to dismiss claims for lack of standing where a plaintiff fails to allege sufficient facts to meet the "able and ready" standard. For example, in *Deemar v. Board of Education of City of Evanston/Skokie*, 2024 WL 3757169 (N.D. Ill. Aug. 9, 2024), the court dismissed a plaintiff's race-discrimination claims for lack of standing where she claimed that her employer discriminated by, *inter alia*, offering race-based affinity groups and race-conscious training programs. *Id.* at *2, 9. Citing *Carney*, the court explained that the plaintiff's allegations were deficient because she failed to allege either that she attended the meetings and trainings, that she faced consequences for not attending, or that she "otherwise would have sought the benefits associated with attending . . . if not for their segregated nature." *Id.* at *9.

In considering claims factually analogous to AAER's claim, another court applied *Carney* and dismissed the plaintiff's claims for lack of standing. *Spitalnick v. King & Spalding, LLP*, 2025 WL 608013, at *5–6 (D. Md. Feb. 25, 2025). In *Spitalnick*, the plaintiff alleged that a law firm's diversity summer program violated § 1981 and Title VII by discriminating against white and heterosexual applicants. *Id.* at *1–2. The court dismissed the claims for lack of standing, concluding that the plaintiff had failed to sufficiently allege an injury-in-fact because she did not apply to the program and failed to allege facts that she was "able and ready" to do so. *Id.* at *5. The court noted that the plaintiff had failed to allege that she took steps toward applying, that she had a history of applying to similar positions, or that she applied to similar positions—instead, she merely alleged an "interest" in the position. *Id.* AAER's allegations here are similarly deficient.

AAER's allegations concerning Member A fall short of meeting the "able and ready" standard. The amended complaint does not allege that Member A expressed interest in applying for LOSF, including by contacting the ABA to inquire about the opportunity or submitting the information he had compiled. It does not allege that Member A has applied for other diversity-

7

focused scholarships or that he is seeking similar opportunities at present. Instead, AAER simply alleges that Member A "sought scholarships" from schools and "researched" others, but "had trouble finding any" that were suitable. Am. Compl. ¶ 29. And while AAER alleges that Member A compiled materials to apply for LOSF (*id.* ¶ 34), most of those materials would already have been necessary for Member A to gather to apply to law school. For example, as AAER admits, the ABA permits applicants to re-use law school letters of recommendation. *Id.* ¶ 15(b).

The allegations pertaining to Member B are similarly deficient. Member B has not yet begun the process of applying to law schools, let alone scholarships—rather, according to the amended complaint, he is "preparing" to apply to law school and "making plans to pay for it." *Id.* ¶ 40. The amended complaint does not allege that Member B has expressed interest in LOSF or similar opportunities, instead merely stating that he "will apply broadly for scholarships." *Id.* Nor is there any indication that Member B has begun to gather LOSF application materials or take steps toward applying—in fact, AAER admits that if Member B applies for LOSF in the future, he "can use many of the same materials" that he will use for his law school applications. *Id.* ¶ 41.

Absent allegations that Member A or Member B took any concrete steps to express their interest in, or apply to, LOSF, the amended complaint contains little more than "words of general intent" that fall short of establishing an "intent [to apply] that is concrete." *Carney*, 592 U.S. at 64. Taken altogether, the allegations reflect a "desire to vindicate" a particular "view of the law," rather than a genuine desire to pursue LOSF. *Spitalnick*, 2025 WL 608013, at *5.

Because AAER lacks standing, the amended complaint should be dismissed.

## II. AAER Fails To State A Claim Under 42 U.S.C. § 1981.

Even if AAER had standing, the amended complaint should still be dismissed for failure to state a claim. Section 1981 provides that "[a]ll persons . . . shall have the same right in every

8

State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." *Id.* § 1981(a). Accordingly, to state a claim, a plaintiff must sufficiently allege the existence of a contractual relationship with the defendant. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475–76 (2006). AAER fails to do so here. AAER alleges that LOSF "involves contracts" because applicants must sign a release form granting the ABA the right to use certain identifying information. Am. Compl. ¶¶ 15–16, 55. Additionally, AAER claims, the scholarship is a "contest," which is a "classic contract[]." *Id.* ¶ 55. AAER is wrong, and the complaint fails to allege the existence of a contractual relationship between LOSF applicants and the ABA.

There is little case law addressing the application of § 1981 to awards voluntarily given by private organizations, and the ABA is aware of no cases from within the Seventh Circuit that have extended § 1981 to this context. Instead, most cases involve employment relationships, which courts have repeatedly concluded constitute "contracts" for purposes of § 1981. *See, e.g., Walker v. Abbott Labs.*, 340 F.3d 471, 476 (7th Cir. 2003) (reversing dismissal of § 1981 claim based on at-will employment relationship); *Descamps v. Chi. Housing Auth.*, 2025 WL 1222581, at *6 (N.D. Ill. Apr. 28, 2025) (denying motions to dismiss § 1981 claims based on employment relationship). These cases highlight why the "contract" on which AAER relies is a poor fit for § 1981.

In the employment context, an employee promises to work for his or her employer, in exchange for the employer's promise to pay. *See, e.g., Walker*, 340 F.3d at 477 ("Illinois courts generally treat at-will employment relationships as contractual in nature.") (citations omitted). Here, by contrast, LOSF recipients do not perform any services to the ABA in exchange for the scholarship funds. Rather, the funds are provided to them to attend law school, in accordance with

9

LOSF's stated purpose of "encourag[ing] students from racial and ethnic minority groups that are traditionally underrepresented in the legal profession to attend law school."[6]

More broadly, case law is clear that where a complaint fails to allege an exchange of value, it fails to state a claim under § 1981. For example, in *Adam v. Obama for Am.*, 210 F. Supp. 3d 979 (N.D. Ill. 2016), the court concluded there was no contractual relationship between an unpaid intern and the organization where she worked. *Id.* at 985–86. The plaintiff contended she agreed to perform work for the defendant in exchange for the prestige associated with the opportunity, and the defendant allowed her access to this prestige in exchange for her agreement to perform the work. *Id.* at 986. However, the court explained, "since not all agreements are contracts," to state a claim, the plaintiff must allege that the defendant was induced to offer her the internship because of "some valuable skill or characteristic" that she "would have used to benefit [the organization] through her willingness to work"—which the plaintiff in *Adam* failed to do. *Id.*

The failure to demonstrate an exchange of value is fatal to a § 1981 claim because formation of a contract requires consideration, or "a bargained-for exchange of promises or performances that may consist of a promise, an act, a forbearance, or the creation, modification, or destruction of a legal relation." *Ross v. May Co.*, 377 Ill. App. 3d 387, 391 (1st Dist. 2007). "A bargained-for exchange exists if one party's promise induces the other party's promise or performance." *Id.* (citing *Boomer v. AT&T Corp.*, 309 F.3d 404, 416 (7th Cir. 2002)).

Here, the amended complaint fails to establish any bargained-for exchange between LOSF applicants and the ABA. The scholarships awarded through LOSF are not supported by consideration because they are discretionary gifts that do not confer any enforceable rights upon

---

[6] American Bar Association, "Legal Opportunity Scholarship," https://www.americanbar.org/groups/diversity/diversity_pipeline/projects_initiatives/legal_opportunity_scholarship/ (last accessed July 29, 2025); *see also* Am. Compl. ¶ 21.

10

scholarship recipients, or any obligations on the ABA. "It is a fundamental principle of law . . . that a gift is a voluntary, gratuitous transfer of property by one to another, and that it is essential to a gift that it should be without consideration." *Provena Covenant Med. Ctr. v. Dep't of Revenue*, 236 Ill. 2d 368, 401 (2010) (citation omitted) (cleaned up). LOSF recipients do not "exchange" anything with the ABA to receive the scholarship awards; rather, the awards are benefits that are voluntarily conferred by the ABA in furtherance of the organization's stated goals. LOSF recipients do not perform any services for the ABA in exchange for the funds received; the funds are provided to them to attend law school and cover related expenses. None of AAER's allegations suggest otherwise, and none of the program materials AAER refers to in the amended complaint require applicants to perform any services for the ABA. *See generally* Am. Compl. ¶¶ 12–19.

Applying this case law to the allegations here makes clear that AAER's claim is flawed in the same way as the plaintiff's in *Adam*. AAER does not allege that the ABA is *induced to* award scholarships *because* applicants sign a release form granting the ABA the ability to use their names and other identifying information in limited circumstances, or *because* they agree to join the ABA as non-dues-paying members. Instead, AAER claims that consideration for the scholarship awards exists because the ABA may be able to use applicants' information to possibly generate additional sources of funding, and because larger membership numbers may allow the ABA to have a broader reach. Am. Compl. ¶ 16. But none of this unsupported speculation about the ABA's revenue generation establishes any link between the LOSF scholarship application and any actual benefit to the ABA. AAER's conclusory, speculative allegations on this point are insufficient to withstand a motion to dismiss. *See Lugo v. IBEW Local #134*, 175 F. Supp. 3d 1026, 1040 (N.D. Ill. 2016) (dismissing § 1981 claim based on "conclusory" and "speculative" assertions of race discrimination, citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556). Indeed, it strains

11

credulity to suggest that the ABA awards $15,000 to students in exchange for the right to publish their names or to increase the ABA's number of free student members—particularly where AAER's own allegations make clear that the program is designed to award funds for a charitable purpose: to allow a more diverse pool of students to attend law school with less financial strain. Am. Compl. ¶ 21 (citing LOSF's purpose and mission).

*American Alliance for Equal Rights v. Fearless Fund Mgmt., LLC*, 103 F.4th 765 (11th Cir. 2024), on which AAER relies (Am. Compl. ¶¶ 53–54), does not compel a different result. To begin, *Fearless Fund*, which was decided by a divided panel of the Eleventh Circuit, is not binding on this Court, and, for the reasons explained above, this Court should conclude that divided opinion was wrongly decided because the charitable grants at issue in that case, like the LOSF scholarships here, were discretionary gifts rather than the basis of a contractual relationship.

In any event, however, *Fearless Fund* is distinguishable. The contest rules at issue in *Fearless Fund* explicitly stated that applicants were agreeing to "A CONTRACT." 103 F.4th at 775. AAER alleges no such statement in the LOSF application, and indeed, there is none. Additionally, the applicants in *Fearless Fund* granted the defendant substantial rights, including the right to "use [their] ideas without any additional compensation." *Id*. at 770. Applicants also gave up the right to pursue claims against the organization in court, instead agreeing to arbitration, and agreed to release and indemnify the organization for various liabilities. *Id*. The LOSF release form contains no such language and merely grants the ABA the right to use certain information in its own materials. Am. Compl. ¶ 15(c). Thus, *Fearless Fund* does not support AAER's position that the LOSF application forms a contract with applicants.

AAER's cited cases regarding "contests" (*id*. ¶ 55) also do not support the application of § 1981 here. *Personavera, LLC v. College of Healthcare Information Management Executives*,

12

2021 WL 1313108 (E.D. Pa. Apr. 8, 2021) involved the cancellation of a contest for a $1 million prize, for which the plaintiffs had already expended significant effort and resources and submitted a prototype that the defendant refused to return. *Id.* at *1, *4. And in *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001), the contract at issue was a retail purchase that included the receipt of a store coupon for perfume samples. *Id.* at 1099–1101, 1103–05. In both cases, a unilateral contract was formed because, in fulfilling the requirements for contest entry, the plaintiffs both performed and provided the necessary consideration. *Personavera, LLC*, 2021 WL 1313108, at *4–5; *see also Hampton*, 247 F.3d at *Id.* at 1104–05. Neither case involved a situation where, as here, the defendant required no performance (or consideration, as discussed above) from the individuals wishing to be considered for a discretionary gift.

AAER fails to allege the existence of a contractual relationship that would bring LOSF within the scope of § 1981, and the amended complaint should be dismissed.

**III. The First Amendment Bars AAER's Claim.**

AAER's claim fails for the additional reason that the relief it seeks would impermissibly interfere with the ABA's First Amendment right to free expression.

The ABA has a First Amendment right to distribute funds as it deems appropriate, consistent with its organizational goals. Courts have repeatedly held that antidiscrimination laws cannot be used to compel an individual's or an organization's expressive conduct. *See, e.g., 303 Creative LLC v. Elenis*, 600 U.S. 570, 579 (2023) (Colorado antidiscrimination law could not be used to "compel an individual to create speech she does not believe"); *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 802–03 (9th Cir. 2022) (Oregon antidiscrimination law did not require private organization to include plaintiff in beauty pageant when doing so would force the organization to "express a message contrary to what it desires to express"); *Coral Ridge Ministries*

*Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021) (claim that Amazon illegally denied participation in charitable program was properly dismissed because plaintiff's interpretation of the law "would violate the First Amendment by essentially forcing Amazon to donate to organizations it does not support"); *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F. Supp. 2d 986, 998–1000 (M.D. Tenn. 2012) (producer's casting decision to limit the number of minority participants in program was protected by First Amendment, defeating § 1981 claim).

So too, here. The ABA has a clearly defined goal of eliminating bias and enhancing diversity in the legal profession, as reflected in publicly available materials published on its website.[7] In operating LOSF, the ABA strives to convey a message consistent with that goal: that it seeks to encourage students from traditionally underrepresented backgrounds to apply to law school, and to provide financial assistance for them to do so. Am. Compl. ¶ 21. This is expressive conduct that is protected by the First Amendment. *See Saadeh v. New Jersey State Bar Ass'n*, 2024 WL 5182533, at *9–10 (N.J. Super. Ct. App. Div. Dec. 20, 2024).

*Saadeh*, which also involved a voluntary association of lawyers, is instructive. There, the plaintiff claimed that the association's practice of reserving certain leadership roles for members of historically underrepresented groups violated state anti-discrimination law. *Id.* at *1–2. The court disagreed, concluding that compelling the association to end this practice would "unconstitutionally infringe its ability to advocate the value of diversity and inclusivity in the Association and more broadly in the legal profession." *Id.* at *9. In determining that these interests were worthy of constitutional protection under the First Amendment, the court noted the association's "many forms of public expression and advocacy on . . . the importance of diversity within . . . the legal community," such that compelling it to alter or eliminate its inclusion program

---

[7] *See supra* note 2.

14

would "significantly affect" the association's ability to advocate for its views. *Id.* at *10. Accordingly, the state's interest in eliminating discrimination, while compelling, did not justify a "severe intrusion" of "prohibiting the Association from expressing views protected by the First Amendment," including "the value of demographic diversity in the legal profession." *Id.* at *11.

Contrary to AAER's assertions (Am. Compl. ¶ 23), the ABA is an advocate for diversity in the legal profession (*id.* ¶ 21) and has the right to engage in expressive conduct consistent with its views—including by awarding scholarships through LOSF. And while AAER claims that the ABA cannot sincerely hold this view due to statements made in prior amicus briefs (*id.* ¶ 23(a)), the Supreme Court reached different conclusions than the positions for which the ABA advocated in those cases—and those rulings are what govern. Indeed, courts have repeatedly upheld the right of private organizations to engage in expressive conduct consistent with their views, including in those cases in which the ABA filed amicus briefs. *See 303 Creative LLC*, 600 U.S. at 577–78; *see also Coral Ridge Ministries Media, Inc.*, 6 F.4th at 1254. And none of AAER's other cited examples of the ABA's conduct (Am. Compl. ¶¶ 23(b)–(d)) negate the ABA's well-established history of advocating for diversity and inclusion in the legal profession—which is exactly the goal that the ABA seeks to further through the administration of LOSF.

AAER's efforts to enjoin the LOSF program, obtain a declaration that it violates § 1981, and seek other relief, negate the purpose of the LOSF scholarship and accordingly, infringe on the ABA's First Amendment rights. Accordingly, AAER's amended complaint should be dismissed.

## CONCLUSION

For these reasons, the ABA respectfully requests that the Court dismiss the amended complaint. Because AAER's claim is fatally deficient, the dismissal should be with prejudice.

15

Dated: July 30, 2025

Respectfully submitted,

THE AMERICAN BAR ASSOCIATION

By: */s/ Joseph J. Torres*
One of its attorneys

Joseph J. Torres
Katherine M. Funderburg
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
jtorres@jenner.com
kfunderburg@jenner.com

**CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for Defendant, hereby certifies that he has caused a true and correct copy of the foregoing to be served via the Court's electronic filing system on:

Cameron T. Norris
Julius Isaac Kairey
R. Gabriel Anderson
Thomas McCarthy
Matthew Pociask
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
julius@consovoymccarthy.com
gabe@consovoymccarthy.com
tom@consovoymccarthy.com
matt@consovoymccarthy.com

Adam K. Mortara
LAWFAIR LLC
40 Burton Hills Blvd, Ste. 200
Nashville, TN 37215
773-750-7154
mortara@lawfairllc.com

July 30, 2025
*Joseph J. Torres*
Joseph J. Torres
Katherine M. Funderburg
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
jtorres@jenner.com
kfunderburg@jenner.com

*Attorneys for Defendant*