### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AMERICAN ALLIANCE FOR EQUAL RIGHTS,

*Plaintiff,*

v.                                                       Case No. 25-cv-3980

AMERICAN BAR ASSOCIATION,

*Defendant.*

## OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

**TABLE OF CONTENTS**

Table of Authorities ........................................................................................................... iii

Introduction ........................................................................................................................ 1

Argument ............................................................................................................................ 2

   I. The complaint plausibly alleges standing ................................................................. 2

   II. The complaint plausibly alleges a violation of §1981 ........................................... 10

   III. The ABA's First Amendment defense fails ........................................................... 14

Conclusion ........................................................................................................................ 20

Certificate of Service ....................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*,
 600 U.S. 570 (2023) .................................................................................. 19

*7241 W. 100th Place Corp. v. Bridgeview*,
 2014 WL 517961 (N.D. Ill. Feb. 6) .......................................................... 19

*American Alliance for Equal Rights v. Fearless Fund Mgmt.*,
 103 F.4th 765 (11th Cir. 2024) ........................................................... passim

*American Alliance for Equal Rights v. Fearless Fund Mgmt.*,
 2023 WL 6295121 (N.D. Ga. Sept. 27) .................................................. 1, 14

*American Alliance for Equal Rights v. Fearless Fund Mgmt.*,
 2023 WL 6520763 (11th Cir. Sept. 30) ......................................................... 1

*American Alliance for Equal Rights v. Founders First*,
 2024 WL 3625684 (N.D. Tex. July 31) ...................................................... 13

*American Alliance for Equal Rights v. Pritzker*,
 2025 WL 2229995 (C.D. Ill. Aug. 5) ..................................................... 1, 6, 7

*American Alliance for Equal Rights v. Southwest Airlines*,
 2024 WL 5012055 (N.D. Tex. Dec. 6) ...................................................... 2, 5

*Ames v. Ohio Dep't of Youth Servs.*,
 605 U.S. 303 (2025) .................................................................................... 1

*B.E. v. A.W.*,
 2024 WL 3984282 (N.D. Ill. Aug. 28) ....................................................... 11

*Bahena v. Aahil Corp.*,
 2022 WL 4609620 (N.D. Ill. Sept. 30) ....................................................... 19

*Bd. of Regents v. Phoenix Software Int'l*,
 2008 WL 3842920 (W.D. Wis. Aug. 18) ..................................................... 15

*Bldg. & Const. Trades Council v. Downtown Dev.*,
 448 F.3d 138 (2d Cir. 2006) ........................................................................ 6

*Boy Scouts of Am. v. Dale*,
 530 U.S. 640 (2000) ................................................................................... 17

*Brandner v. AAOS*,
 2012 WL 4483820 (N.D. Ill. Sept. 27) ................................................. 11, 12

*Brandner v. AAOS*,
 760 F.3d 627 (7th Cir. 2014) ...................................................................... 11

*Braun v. Vill. of Palatine*,
 56 F.4th 542 (7th Cir. 2022) ........................................................................ 3

*Brooklyn Daily Eagle v. Voorhies*,
 181 F. 579 (C.C.E.D.N.Y. 1910) ............................................................... 14

*Brown v. ABM Indus.*,
    2015 WL 7731946 (N.D. Ill. Dec. 1) ................................................................ 2

*Bruni v. Pittsburgh*,
    824 F.3d 353 (3d Cir. 2016) ...................................................................... 20

*Bucklew v. Precythe*,
    587 U.S. 119 (2019) .................................................................................. 15

*Carney v. Adams*,
    592 U.S. 53 (2020) ............................................................................... 9, 10

*Christian Lab. Ass'n v. Duluth*,
    2021 WL 2783732 (D. Minn. July 2) .......................................................... 10

*City of Evanston v. Barr*,
    412 F. Supp. 3d 873 (N.D. Ill. 2019) ............................................................ 3

*Cobaugh v. Klick-Lewis, Inc.*,
    561 A.2d 1248 (Pa. Super. 1989) ................................................................ 14

*Crawford v. Uber Techs.*,
    2021 WL 3810259 (N.D. Cal. Aug. 26) ........................................................ 9

*Deemar v. Bd. of Educ. of City of Evanston/Skokie*,
    2024 WL 3757169 (N.D. Ill. Aug. 9) ........................................................... 6

*Descamps v. Chicago Hous. Auth.*,
    2025 WL 1222581 (N.D. Ill. Apr. 28) ..................................................... 3, 5

*Do No Harm v. NAEMT*,
    2025 WL 973614 (S.D. Miss. Mar. 31) .............................................. passim

*Doe v. City of Lafayette*,
    377 F.3d 757 (7th Cir. 2004) .................................................................... 18

*Doe v. Genesis Health Sys.*,
    2024 WL 3890164 (C.D. Ill. Aug. 21) ........................................................ 11

*Domino's Pizza v. McDonald*,
    546 U.S. 470 (2006) ................................................................................. 10

*Finch v. Treto*,
    606 F. Supp. 3d 811 (N.D. Ill. 2022) .......................................................... 4

*Foxxxy Ladyz Adult World v. Vill. of Dix*,
    779 F.3d 706 (7th Cir. 2015) .................................................................... 20

*Giannavola v. Lee*,
    2025 WL 1932020 (W.D.N.Y. July 14) ....................................................... 15

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ...................................................................... 3, 5, 7, 10

*Greer's Ranch Cafe v. Guzman*,
    540 F. Supp. 3d 638 (N.D. Tex. 2021) ......................................................... 5

iv

*Hall v. San Francisco*,
    2017 WL 5569829 (N.D. Cal. Nov. 20) ........................................................ 6, 10

*Hampton v. Ford Motor Co.*,
    561 F.3d 709 (7th Cir. 2009) ..................................................................... 12, 13

*Harlem-Irving Realty, Inc. v. Alesi*,
    425 N.E.2d 1354 (Ill. App. 1981) ..................................................................... 14

*Hassan v. Iowa*,
    2012 WL 12974068 (S.D. Iowa Apr. 26) .................................................... 6, 9

*Hassan v. Iowa*,
    493 F. App'x 813 (8th Cir. 2012) ..................................................................... 7

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984) .......................................................................................... 17

*Hunt v. Pers. Staffing Grp.*,
    2018 WL 1014513 (N.D. Ill. Feb. 22) .............................................................. 11

*Hunt v. Wash. Apple Advert. Commn*,
    432 U.S. 333 (1977) ......................................................................................... 2

*In re Arthur J. Gallagher Data Breach Litig.*,
    631 F. Supp. 3d 573 (N.D. Ill. 2022) ............................................................. 11

*Johnson v. Foster*,
    2020 WL 5891405 (N.D. Ill. Oct. 5) ................................................................ 8

*Johnson v. Ry. Express Agency, Inc.*,
    421 U.S. 454 (1975) ....................................................................................... 10

*Jones v. Schneiderman*,
    974 F. Supp. 2d 322 (S.D.N.Y. 2013) .......................................................... 18

*Larsen v. U.S. Navy*,
    486 F. Supp. 2d 11 (D.D.C. 2007) ......................................................... 4, 7, 9

*League of Women Voters of Ohio v. LaRose*,
    741 F. Supp. 3d 694 (N.D. Ohio 2024) ......................................................... 15

*Lindy Lu LLC v. Ill. Cent. R. Co.*,
    984 N.E.2d 1171 (Ill. App. Ct. 3d Dist. 2013) ............................................... 12

*McDonald v. Santa Fe Trail Transp. Co.*,
    427 U.S. 273 (1976) ....................................................................................... 10

*Milwaukee Police Ass'n v. Flynn*,
    863 F.3d 636 (7th Cir. 2017) ........................................................................... 3

*Mockeridge v. Alcona Cnty.*,
    665 F. Supp. 3d 857 (E.D. Mich. 2023) ......................................................... 15

*Moore v. USDA*,
    993 F.2d 1222 (5th Cir. 1993) ..................................................................... 3, 5

*Nat'l Experiential, LLC v. Chicago*,
  2024 WL 3757066 (N.D. Ill. Aug. 9) ................................................................ 19

*Nawrocki v. Oak Brook Towers Condo. Ass'n.*,
  2021 WL 698485 (N.D. Ill. Feb. 23) .................................................................. 2

*Newton Tractor Sales v. Kubota Tractor Corp.*,
  906 N.E.2d 520 (Ill. 2009) ................................................................................ 13

*Nuziard v. Minority Bus. Dev. Agency*,
  676 F. Supp. 3d 473 (N.D. Tex. 2023) ............................................................... 3

*Okla. ex rel. Edmondson v. Pope*,
  516 F.3d 1214 (10th Cir. 2008) ......................................................................... 15

*Patterson v. McLean Credit Union*,
  491 U.S. 164 (1989) ........................................................................................... 10

*Pyle v. Woods*,
  2015 WL 5794345 (D. Utah Oct. 2) ................................................................. 16

*Pyle v. Woods*,
  874 F.3d 1257 (10th Cir. 2017) ......................................................................... 16

*R.A.V. v. St. Paul*,
  505 U.S. 377 (1992) ........................................................................................... 16

*Rita v. Tinley Park*,
  2024 WL 4346548 (N.D. Ill. Sept. 30) .............................................................. 20

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) ........................................................................................... 18

*Rumsfeld v. FAIR*,
  547 U.S. 47 (2006) ............................................................................................. 19

*Runyon v. McCrary*,
  427 U.S. 160 (1976) ........................................................................................... 16

*Saadeh v. New Jersey State Bar Association*,
  2024 WL 5182533 (N.J. App. Dec. 20) ...................................................... 17, 19

*Satkar Hosp. v. Cook Cnty. Bd. of Rev.*,
  2011 WL 4431029 (N.D. Ill. Sept. 21) .............................................................. 15

*Shea v. Kerry*,
  796 F.3d 42 (D.C. Cir. 2015) ............................................................................... 3

*Siegel v. Zoominfo Techs.*,
  2021 WL 4306148 (N.D. Ill. Sept. 22) .............................................................. 18

*Spitalnick v. King & Spalding, LLP*,
  2025 WL 608013 (D. Md. Feb. 25) .................................................................. 4, 6

*Stand Strong USA, Inc. v. Harwich Enters.*,
  2020 WL 13267387 (S.D. Fla. Dec. 28) ............................................................ 14

*Students for Fair Admissions v. Harvard*,
  600 U.S. 181 (2023) ............................................................................................ 1

*Students for Fair Admissions v. United States Naval Academy*,
  2024 WL 4057002 (D. Md. Sept. 5) .................................................................. 7

*Sullivan-Knoff v. Chicago*,
  348 F. Supp. 3d 787 (N.D. Ill. 2018) .............................................................. 20

*Tagami v. Chicago*,
  875 F.3d 375 (7th Cir. 2017) ............................................................... 18, 19, 20

*The Bail Project, Inc. v. Comm'r, Ind. Dep't of Ins.*,
  76 F.4th 569 (7th Cir. 2023) ............................................................................ 19

*United States v. Hayward*,
  6 F.3d 1241 (7th Cir. 1993) .............................................................................. 18

*United States v. O'Brien*,
  391 U.S. 367 (1968) .......................................................................................... 18

*Uzuegbunam v. Preczewski*,
  592 U.S. 279 (2021) ............................................................................................ 3

*Wisconsin v. Mitchell*,
  508 U.S. 476 (1993) .......................................................................................... 16

*WMATA v. Loc. 689, Amalgamated Transit Union*,
  818 F. Supp. 2d 888 (D. Md. 2011) ................................................................. 16

**Statutes**

28 U.S.C. §2403(b) ................................................................................................ 15

42 U.S.C. §1981(a) ................................................................................................ 10

42 U.S.C. §1981(b) ................................................................................................ 11

**Other Authorities**

*American Bar Association Considers Ending Diversity Requirements for Board Seats*, Reuters
  (Aug. 4, 2025), archive.is/d1gvL ..................................................................... 17

Model Rules of Pro. Conduct r. 8.1 (Am. Bar Ass'n 2020) ................................ 5

**Rules**

4B Fed. Prac. & Proc. Civ. §1154 (4th ed.) ....................................................... 15

Fed. R. Civ. P. 5.1(a) ........................................................................................... 15

Fed. R. Civ. P. 5.1(c) ........................................................................................... 15

Fed. R. Civ. P. 5.1(d) ........................................................................................... 15

## INTRODUCTION

Though it waits until page 12, the ABA eventually admits it wants this Court to say that the most on-point authority—the Eleventh Circuit's decision in *AAER v. Fearless Fund*—is "wrongly decided." MTD (Doc.24-1) 12 (citing 103 F.4th 765 (11th Cir. 2024)). There the Eleventh Circuit rejected the same defenses about standing, the existence of a contract, and the First Amendment that the ABA raises here. The ABA says the Eleventh Circuit panel was "divided." MTD 12. But the panel was *not* divided on the existence of a contract—a point that none of the six judges who heard the case doubted. *See Fearless*, 103 F.4th at 775-76 (merits panel); 2023 WL 6520763, at *1 (11th Cir. Sept. 30) (motions panel); 2023 WL 6295121, at *4-5 (N.D. Ga. Sept. 27) (district court). The panel was *not* divided on the First Amendment—a radical defense that "risks sowing the seeds of antidiscrimination law's demise." 103 F.4th at 779. And while the panel was divided on standing, the majority voted for the Alliance; the Alliance's allegations here are more robust; and *Fearless* involved a later stage of litigation (preliminary injunction versus motion to dismiss). Accepting the ABA's view of what an association must do to *plead* standing would split with even more decisions. *E.g.*, *AAER v. Pritzker*, 2025 WL 2229995, at *4-5 (C.D. Ill. Aug. 5); *Do No Harm v. NAEMT*, 2025 WL 973614, at *3-5 (S.D. Miss. Mar. 31).

This Court should not break new ground. No doubt, the ABA raises these defenses because it thinks its scholarship for nonwhites is a benign form of discrimination. *Cf. SFFA v. Harvard*, 600 U.S. 181, 214 (2023) ("Racial discrimination is invidious in all contexts." (cleaned up)). But if the ABA had a scholarship that *only* white students could get, then it could raise all the same defenses to insulate *that* program from legal challenge too. Antidiscrimination law doesn't change when the victim's race changes. *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 310 (2025). This Court should deny the ABA's motion.

## ARGUMENT

The ABA moves to dismiss the amended complaint under Rules 12(b)(1) and (6). Its 12(b)(1) motion is a "facial challenge" to the Alliance's Article III standing, since it tests only whether the complaint's allegations "'establish standing'" even accepting them as true. *Nawrocki v. Oak Brook Towers Condo. Ass'n.*, 2021 WL 698485, at *2-3 (N.D. Ill. Feb. 23); *see* MTD 4. A facial challenge under Rule 12(b)(1) is assessed under the same rules that govern motions to dismiss under Rule 12(b)(6). *Brown v. ABM Indus.*, 2015 WL 7731946, at *5 (N.D. Ill. Dec. 1).

The ABA raises only three grounds for dismissal. (It does *not* contest that its scholarship discriminates based on race, that its discrimination must survive at least strict scrutiny, or that the ABA fails that test. *See* Am.-Compl. ¶¶51-52, ¶¶56-61.) The ABA says the Alliance fails to plead standing. MTD 4-8. It says the scholarship involves no contracts under §1981. MTD 8-13. And it says that, if §1981 bans the ABA's race-based scholarship, then that 159-year-old statute violates the First Amendment. MTD 13-15. Each argument fails, especially at the pleading stage.

## I. The complaint plausibly alleges standing.

On standing, the parties agree on the basics. The Alliance has associational standing if it satisfies the three requirements from *Hunt*: It has at least one member who would have standing on his own, the suit is germane to its mission, and neither its claims nor its relief requires the members' individual participation. *Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The ABA challenges only the first requirement. MTD 5. It doesn't contest that this case is germane to the Alliance's mission. Am.-Compl. ¶5; *see Fearless*, 103 F.4th at 771. And it doesn't contest that the Alliance's §1981 claim and its requests for a declaration, injunction, and nominal damages do not require the participation of individual members. Am.-Compl. ¶63; *see Fearless*, 103 F.4th at 771; *AAER v. Southwest Airlines*, 2024 WL 5012055, at *3-4 (N.D. Tex. Dec. 6). This third *Hunt* requirement is not jurisdictional, *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640

2

(7th Cir. 2017); so by failing to challenge it in its opening brief, the ABA forfeits the point at this stage, *Braun v. Vill. of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022).

The parties also agree on how one of the Alliance's members would have injury, causation, and redressability. As the ABA concedes, its scholarship flatly bars white students based on race. MTD 1, 3. That racial bar injures white students by discriminating against them and by denying them an equal opportunity to compete. *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). These injuries occur regardless whether the student would have *won* the scholarship, *id.*, and regardless whether a white student took the futile step of applying, MTD 5; *see Fearless*, 103 F.4th at 774; *Moore v. USDA,* 993 F.2d 1222, 1223-24 & n.2 (5th Cir. 1993). These injuries will imminently occur if a white student is "'able and ready'" to apply once a court orders the ABA to stop discriminating. MTD 5; *see Gratz*, 539 U.S. at 262. And these injuries have already occurred if a white student "*would have been* 'able and ready' to apply for" the ABA's scholarship in the past but couldn't because he wasn't "a minority." *Descamps v. Chicago Hous. Auth.*, 2025 WL 1222581, at *3 (N.D. Ill. Apr. 28) (emphasis added) (cleaned up); *accord, e.g.*, *Shea v. Kerry*, 796 F.3d 42, 50 (D.C. Cir. 2015). Causation is satisfied because these injuries are "traceable" to the ABA's race-based "exclusion." *Fearless*, 103 F.4th at 772. And redressability is satisfied by an injunction requiring the ABA to stop discriminating, *id.*, or by nominal damages for the ABA's past discrimination, *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292-93 (2021).

Though the Alliance needs only "one" member with standing on his own, *City of Evanston v. Barr*, 412 F. Supp. 3d 873, 881 (N.D. Ill. 2019), its complaint identifies at least two. The ABA never disputes that Members A-B are "able" to apply, since they meet the scholarship's few non-racial eligibility requirements. *Nuziard v. Minority Bus. Dev. Agency*, 676 F. Supp. 3d 473, 480 (N.D. Tex. 2023). Their GPAs are above a 2.5. Am.-Compl. ¶31(b), ¶44. Member A was a rising

3

1L at an ABA-accredited law school when he tried to apply in 2025, ¶28, ¶31(a); and he asks this Court, as a remedy for the ABA's prior discrimination, to let him apply as if he were a 1L in 2026, ¶37, ¶63(E). Member B will be a rising 1L in 2026. ¶39, ¶44. Though he has not yet been admitted to an ABA-accredited law school, that situation is common—hence why the ABA lets students apply for the scholarship before they are admitted anywhere. ¶12. Both members are also "ready" to apply, once a court orders the ABA to stop discriminating. ¶¶33-34, ¶¶43-45.

The ABA questions the members' readiness by suggesting their "'intent'" to apply is insincere, MTD 8, but this line of attack doesn't work for two main reasons. It ignores the scores of specific, contrary allegations in the complaint. And it misunderstands the pleading standard.

**1.** If the Alliance's complaint does not allege that Members A-B are ready to apply to the ABA's scholarship in 2026, then it's unclear how any complaint ever could. The complaint unequivocally states that, if a court ordered the ABA to stop discriminating, Members A-B "would apply" for the Legal Opportunity Scholarship. Am.-Compl. ¶37, ¶45; *see Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 20-21 (D.D.C. 2007); *cf. Spitalnick v. King & Spalding*, 2025 WL 608013, at *5 (D. Md. Feb. 25) (plaintiff expressed only "'interest'"). The complaint "pinpoint[s]" a "specific" program that the members would apply for—the scholarship's next cycle, which imminently opens in February 2026. *Fearless*, 103 F.4th at 774; *NAEMT*, 2025 WL 973614, at *4-5; *see* Am.-Compl. ¶¶34-37, ¶45. It further explains why each member wants the scholarship, highlights their financial need, and reveals "how each [member] would use" the money. *Fearless*, 103 F.4th at 774; *see* Am.-Compl. ¶¶29-30, ¶¶40-41. And though not necessary, the complaint details the members' "steps to prepare." MTD 6. Member A tried to apply for the ABA's scholarship in 2025—doing everything short of clicking submit. Am.-Compl. ¶¶34(a)-(g), ¶35. His past attempt bolsters his future intent, *Finch v. Treto*, 606 F. Supp. 3d 811, 826 (N.D. Ill. 2022), especially since it means

4

he already has the materials to apply again, Am.-Compl. ¶¶34-35, ¶37; *see Greer's Ranch Cafe v. Guzman*, 540 F. Supp. 3d 638, 646 (N.D. Tex. 2021). While Member B is currently focusing on his law-school applications, he is also researching scholarships, ¶¶40-41, and he's gathering the same materials that he'll later use to apply for the ABA's scholarship, ¶39, ¶41. Both members are also here "contemporaneously express[ing] an interest in applying" for the fast-approaching 2026 cycle. MTD 6; *see Gratz*, 539 U.S. at 261 & n.14 (plaintiff's "request" for relief letting him into the program "corroborated" the sincerity of his intent to apply).

In addition to these members' standing to seek an injunction for future cycles, Member A has standing to seek nominal damages for the last cycle. The question for damages is whether Member A was able and ready to apply to the ABA's scholarship *in April 2025*. *See Descamps*, 2025 WL 1222581, at *3. He was, and the ABA barely argues otherwise. Per the complaint, Member A created an account on Kaleidoscope, visited the scholarship's application portal, reviewed the questions, filled them out, drafted the required essay, collected the required documents, paid fees, and otherwise completed the application. Am.-Compl. ¶¶34(a)-(g), ¶35. He did all this before the April 15 deadline. ¶¶35-36. Though the ABA deems it suspicious that Member A did not actually click "submi[t]," MTD 7, the ABA tells applicants that only racial minorities can apply, and it makes applicants certify that their applications are truthful, Am.-Compl. ¶12, ¶17. Surely the ABA doesn't think a prospective law student should have submitted an application *dishonestly* suggesting he's a racial minority. *Cf.* ABA Model Rule 8.1. So "it's not clear what more [Member A] should have done, short of actually [submitting the application] and prompting a certain rejection. Article III doesn't require so futile a gesture," *Fearless*, 103 F.4th at 774—including for backward-looking damages, *Southwest*, 2024 WL 5012055, at *1, *3-4; *Moore*, 993 F.2d at 1223-24.

5

The Alliance's allegations here are nothing like the ABA's sporadic cases where courts dismissed complaints for failing to allege a plaintiff's readiness to apply.

- In *Deemar*, the plaintiff made *no* allegation that, if the challenged programs were open to all races, then she intended to participate. *Deemar v. Bd. of Educ. of City of Evanston/Skokie*, 2024 WL 3757169, at *9 (N.D. Ill. Aug. 9). Here, the Alliance alleges that its members have that intent—expressly, Am.-Compl. ¶33, ¶43—and with details like when they would apply, why they would apply, and how one tried to apply in the past, ¶¶29-35, ¶¶40-46.

- In *Spitalnick*, the plaintiff could not seek "prospective relief" because the internship for law students was no longer available and she had already graduated from law school. 2025 WL 608013, at *6. But here, the ABA's scholarship is available annually and opens again soon, and the Alliance's members are still law students with continued financial need. Am.-Compl. ¶¶28-30, ¶¶39-40.

- The *Spitalnick* plaintiff could not seek damages because her complaint alleged "nothing about any steps she took toward applying" in the past, 2025 WL 608013, at *5, and her stated reasons for wanting the internship had nothing to do with what the internship provided, *id.* at *5 n.4. But here, the Alliance explains in detail the "steps" that Member A took to apply in 2025, including his extensive work "preparing an application." *Id.* at *5; *see* Am.-Compl. ¶¶34(a)-(g), ¶35. And Member A's reason for wanting the ABA's scholarship—to help pay for law school—is precisely what the ABA's scholarship provides. ¶¶29-30.

**2.** Embracing the ABA's counterarguments would require this Court to misapply the pleading standard. "There is no heightened pleading requirement for allegations of standing." *Bldg. & Const. Trades Council v. Downtown Dev.*, 448 F.3d 138, 145 (2d Cir. 2006). The ABA cannot contradict the complaint's factual allegations: On a facial challenge to standing, this Court must accept the complaint's facts as true. *NAEMT*, 2025 WL 973614, at *3-5. The ABA cannot fault the Alliance for omitting certain details: Complaints can plead standing "'general[ly]'" because courts "'presume that general allegations embrace those specific facts that are necessary.'" *Pritzker*, 2025 WL 2229995, at *5; *accord Hall v. San Francisco*, 2017 WL 5569829, at *6 (N.D. Cal. Nov. 20) (rejecting that complaints need "detailed allegations of a plaintiff's 'qualifications, financing, and experience'" to plead "'able and ready'"); *Hassan v. Iowa*, 2012 WL 12974068, at *3 n.4 (S.D. Iowa Apr. 26) (holding that a complaint's "general allegations as to 'readiness' will

6

suffice"), *aff'd*, 493 F. App'x 813 (8th Cir. 2012). And the ABA cannot construe any allegations or omissions *against* the Alliance. *NAEMT*, 2025 WL 973614, at *5. Yet the arguments in the ABA's motion all violate one or more of these principles.

The ABA claims that Members A-B have not "contact[ed] the ABA to inquire about the [scholarship]." MTD 7. But Member A tried to *apply* for the scholarship, which is far stronger evidence of intent than merely contacting the ABA. Am.-Compl. ¶¶34(a)-(g), ¶35. Plus, Member A did contact the ABA (through counsel) before the 2025 cycle's deadline. ¶36. Members A-B also contacted the ABA and "expressed interest in applying for LOSF" in a major way by author-izing this lawsuit and asking a court to let them join the upcoming cycle. MTD 7; *see Gratz*, 539 U.S. at 261 & n.14. In all events, the ABA does not require anyone to contact it before applying; applicants are told to use an online portal. Am.-Compl. ¶14, ¶24. Any contact by Members A-B would have been "futile" anyway, since the ABA's program flatly bars whites and the ABA is *still* defending that racial bar here. *Fearless*, 103 F.4th at 774.

The ABA faults the complaint for not alleging that Members A-B "applied for other diver-sity-focused scholarships." MTD 7-8. But the complaint alleges that Member A tried to apply to this scholarship once before. Am.-Compl. ¶¶34(a)-(g); *see Larsen*, 486 F. Supp. 2d at 20-21; *SFFA v. USNA*, 2024 WL 4057002, at *5 (D. Md. Sept. 5). And it alleges that Member A applied for other scholarships. Am.-Compl. ¶29; *see Pritzker*, 2025 WL 2229995, at *4-5. It also alleges that Member B will apply to scholarships broadly. Am.-Compl. ¶40. More fundamentally, the com-plaint alleges that both members want to apply to *the ABA's* scholarship. ¶¶33-35, ¶¶43-45. The ABA cites no case suggesting that a plaintiff who pleads he is ready to apply to the challenged program must also plead that he's ready to apply to some other program. *See NAEMT*, 2025 WL 973614, at *3-5 (holding the opposite); *Fearless*, 103 F.4th at 774 & n.3 (same at preliminary-

injunction stage). Even if Members A-B apply to zero other "diversity-focused scholarships," MTD 7-8, this Court cannot draw inferences against the Alliance at this stage, *Johnson v. Foster*, 2020 WL 5891405, at *3 (N.D. Ill. Oct. 5). And the complaint dispels any negative inference: It explains how the ABA's scholarship is unique because its nonracial qualifications are unusually broad, its application process is unusually easy, and its awarded amount is unusually high. Am.-Compl. ¶¶11-12. Tellingly, the ABA doesn't even try to identify another "diversity-focused" scholarship that resembles the ABA's (and doesn't discriminate against white students).

Most boldly, the ABA says the complaint does not allege "any concrete steps" that Members A-B took "to express their interest in, or apply to, LOSF." MTD 8. With respect to Member A, that argument is bizarre. The complaint details a litany of specific steps that he took to apply in 2025. Am.-Compl. ¶¶34(a)-(g). While the ABA speculates that Member A took those steps to apply for law school, not the ABA's scholarship, MTD 8, the complaint alleges the opposite, Am.-Compl. ¶¶34(a)-(g). Those facts must be accepted as true. And this Court cannot draw any negative inference against the Alliance from the fact that Members A-B can reuse materials from their law-school applications to apply for the ABA's scholarship. *Foster*, 2020 WL 5891405, at *3. The ABA *encourages* applicants to reuse those materials. Am.-Compl. ¶15(b). And the fact that Members A-B will already have the materials they need to apply makes them more able and ready, not less. Member B also joined this lawsuit and seeks relief letting him equally apply, which is certainly a "concrete ste[p]." MTD 8. And because the ABA's scholarship bars him based on race, the law does not require him to take any other concrete (and futile) steps. Even if it did, there is nothing that Member B can do—other than continue assembling his law-school applications—until the ABA opens the application portal for the 2026 cycle in February. Am.-Compl. ¶24, ¶¶41-43. As soon as the portal is open and the court remedies the ABA's discrimination, Member B will

take all necessary steps to timely apply, ¶45, which is sufficient, *see Larsen*, 486 F. Supp. 2d at 22.

Finally, the ABA suggests the members' intentions are not sincere—that, like the plaintiff in *Carney v. Adams*, they are pursuing only a generalized grievance. MTD 6, 8. *Carney* was decided at summary judgment, not on a motion to dismiss. 592 U.S. 53, 66 (2020). Based on the "evidence" unearthed in "discovery," the Court rejected the plaintiff's testimony that he was ready to apply as disingenuous. *Id*. at 61-66; *see Crawford v. Uber Techs*., 2021 WL 3810259, at *3 (N.D. Cal. Aug. 26) (explaining *Carney*). That plaintiff could've applied for 14 prior judgeships but didn't; he wasn't aware of any upcoming vacancies; he admitted that he sued because he got the idea from a law-review article; and he abruptly came out of retirement and changed his lifelong party registration. *Carney*, 592 U.S. at 61-64. The Court warned that its finding of insincerity was "highly fact-specific." *Id.* at 63. It notably did "not decide whether a statement of intent alone under other circumstances could be enough." *Id.* at 64.

*Carney* has no application here. The Alliance's members sincerely intend to apply for the ABA's scholarship, Am.-Compl. ¶27, ¶37, ¶45, a factual allegation that this Court must credit as true at this stage, *Hassan*, 2012 WL 12974068, at *3 n.4. The ABA has no "contrary evidence" to attack their sincerity or intent, *Carney*, 592 U.S. at 64, since it brings only a facial challenge to standing. Members A-B are also nothing like the plaintiff in *Carney*. *See Fearless*, 103 F.4th at 773-74 (distinguishing the Alliance's members from the *Carney* plaintiff). They identified a specific opportunity and a specific "timeframe." *Carney*, 592 U.S. at 63; *see* Am.-Compl. ¶35, ¶37, ¶43, ¶45. And they did not fail to apply in other cycles "when [they] w[ere] eligible." *Carney*, 592 U.S. at 63-64. Because the scholarship is available only to rising 1Ls, Member B could never apply before, Am.-Compl. ¶10, ¶39, ¶44, and Member A tried to apply as a rising 1L, ¶28, ¶¶35-36; *cf.*

9

*Carney*, 592 U.S. at 63 (faulting plaintiff for identifying no "past injury" or past "efforts" to apply). Nor is there anything odd about law students with current financial need wanting to apply for a lucrative scholarship that has few eligibility requirements and an easy application process. This Court has no basis to entertain a *Carney*-style attack on the Alliance's complaint. *See Christian Lab. Ass'n v. Duluth*, 2021 WL 2783732, at *9 n.12 (D. Minn. July 2) (distinguishing *Carney* "because proof is not required at [the pleading] stage"); *Hall*, 2017 WL 5569829, at *6 (similar).

## II. The complaint plausibly alleges a violation of §1981.

The ABA does not dispute that, if its scholarship involves contracts, then its racial bar violates 42 U.S.C. §1981. Section 1981 gives "[a]ll" persons "the same right" to "make and enforce contracts" as "white citizens." 42 U.S.C. §1981(a). It bans all racial discrimination in contracting, regardless which race is helped or harmed. *McDonald v. Santa Fe Trail Transp.*, 427 U.S. 273, 295-96 (1976). It covers discrimination by both public and private actors. *Johnson v. Ry. Express Agency, Inc*., 421 U.S. 454, 459-60 (1975). And it covers not just existing contracts, but also the refusal to contract with someone new. *Domino's Pizza v. McDonald*, 546 U.S. 470, 476 (2006). By its terms, "§1981 covers all types of contracts, not just employment contracts." *Patterson v. McLean Credit Union*, 491 U.S. 164, 183 (1989); *see, e.g.*, *Gratz*, 539 U.S. at 276 n.23 (state-university admission); *Runyon v. McCrary*, 427 U.S. 160, 172 (1976) (private-school admission); *Fearless*, 103 F.4th at 775-76 (private grant); *NAEMT*, 2025 WL 973614, at *5-6 (private scholarship); *cf.* MTD 9-10 (wrongly suggesting §1981 is mainly about "employment" contracts).

The ABA's scholarship involves at least four express contracts: Kaleidoscope's privacy policy, Kaleidoscope's terms of service, the ABA's privacy policy, and the ABA's release. The scholarship itself is an essay contest, which alone makes it a contract. While any *one* of these contracts would trigger §1981, the ABA ignores the first three. And it denies that the release or contest are contracts based on arguments that have no basis in contract law.

10

**1. Kaleidoscope Contracts**: To apply for its scholarship, the ABA makes applicants agree to Kaleidoscope's privacy policy and terms and conditions. Am.-Compl. ¶14. Both are contracts: They make applicants give up rights to their personal data in exchange for getting to use Kaleidoscope's platform to apply for scholarships. ¶14; *see, e.g.*, *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 598-99 (N.D. Ill. 2022) (ruling that similar terms of use and privacy policy were contracts); *Doe v. Genesis Health Sys.*, 2024 WL 3890164, at *7-8 (C.D. Ill. Aug. 21) (similar). Yet the ABA denies white applicants the "benefits" of those contracts by not letting them equally compete for the scholarship. 42 U.S.C. §1981(b). Though these contracts are with Kaleidoscope, the ABA makes applicants contract with Kaleidoscope, employs Kaleidoscope to run its application process, and then denies white applicants the benefits of those contracts. Am.-Compl. ¶12, ¶14, ¶19(c). That conduct violates §1981. *See Hunt v. Pers. Staffing Grp.*, 2018 WL 1014513, at *4 (N.D. Ill. Feb. 22); *e.g.*, *B.E. v. A.W.*, 2024 WL 3984282, at *2 (N.D. Ill. Aug. 28). Though the Alliance identified these contracts with Kaleidoscope in its complaint, the ABA's motion ignores them entirely. Any new arguments in its reply should be disregarded. *Brandner v. AAOS*, 2012 WL 4483820, at *13 n.3 (N.D. Ill. Sept. 27), *aff'd*, 760 F.3d 627 (7th Cir. 2014).

**2. ABA's Privacy Policy**: To apply for the ABA's scholarship, applicants must become members of the ABA and agree to the ABA's privacy policy. Am.-Compl. ¶¶15-16. Like Kaleidoscope's, the ABA's privacy policy is a contract: It lets the ABA sell and use an applicant's personal data in exchange for the benefits of membership. ¶16. The ABA never denies that its scholarship requires applicants to become members, that becoming a member requires applicants to agree to its privacy policy, that its privacy policy is a contract that requires members to give up rights, or that the ABA denies white applicants the benefits of this bargain by not letting them apply or compete for the scholarship. It never discusses its privacy policy at all. Again, this Court

should disregard any new arguments in the ABA's reply. *Brandner*, 2012 WL 4483820, at *13 n.3.

**3. Release**: Perhaps the simplest reason why the ABA's scholarship is contractual is the mandatory release. To apply, the ABA makes applicants sign a "Release Form" where they agree to give the ABA "'the right to use'" their "'name and voice'" in "'all'" of the ABA's "'media.'" Am.-Compl. ¶15(c). And if an applicant is "'selected'" for the scholarship, the ABA can also use their "'photograph, biography and excerpts from [their] scholarship application.'" ¶15(c). A release is a "contract." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009). And the rights to privacy and publicity that applicants give the ABA are "valuable." *Fearless*, 103 F.4th at 779 n.7. Lest there be any doubt, the ABA tells applicants that the waiver of those rights is "'*consideration* … for the opportunity to participate.'" Am.-Compl. ¶15(c) (emphasis added).

Though the ABA now denies that its release is supported by "consideration," *see* MTD 10-13, that argument fails. The ABA wrongly assumes that a contract does not exist unless the two sides get roughly equal consideration. Black-letter law says otherwise. Consideration requires only "some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss of responsibility given, suffered or undertaken by the other." *Lindy Lu LLC v. Ill. Cent. R. Co*., 984 N.E.2d 1171, 1176 (Ill. App. Ct. 3d Dist. 2013). So courts "generally will not examine the adequacy of the consideration." *Id.* The ABA says it "strains credulity" to think the ABA would give someone "$15,000" in exchange for their privacy and intellectual-property rights, MTD 11-12, but the ABA misstates the bargain. The release doesn't make applicants waive their rights in exchange for $15,000; it makes applicants waive their rights in exchange for "the opportunity" to get $15,000. Am.-Compl. ¶15(c). It also makes applicants join the ABA, giving the ABA the added right to sell their data to third parties and other valuable benefits. ¶16. That deal—privacy and

12

intellectual-property rights in exchange for a *chance* to win $15,000—easily counts as a "bargained-for exchange." *Fearless*, 103 F.4th at 799 n.7. Even if consideration were technically missing, the ABA's promise that its release is "consideration" for the opportunity to compete would alone create a contract. *See generally Newton Tractor Sales v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523-25 (Ill. 2009) (discussing promissory estoppel).

This case cannot be distinguished from *Fearless*—as the ABA seems to appreciate, since its lead argument is that *Fearless* is "wron[g]." MTD 12. There the defendant's contest was governed by rules that offered the chance to win a $20,000 grant in exchange for the right "to use [applicants'] idea, name, image, and likeness for promotional purposes." *Fearless*, 103 F.4th at 775. These rules created "a bargained-for exchange in which both parties obtain valuable benefits and undertake meaningful obligations." *Id.* at 779 n.7. Though the rules in *Fearless* also included an arbitration and indemnity clause, the decision turned on the fact that the contest made applicants give away valuable rights—not *how many* valuable rights. *Id.* at 775; *accord AAER v. Founders First*, 2024 WL 3625684, at *3 n.7 (N.D. Tex. July 31) (similar contest lacking those additional terms was still a contract). And though the defendant in *Fearless* called the rules a "contract," the decision turned on the substance of the bargain—not the use of that word, which the rules had since dropped. 103 F.4th at 775. But if language were decisive, then the ABA loses here: It calls its agreement a "'release'" supported by "'consideration,'" classic words of contracting. Am.-Compl. ¶15(c). "A release," after all, "is simply a particular type of contract." *Hampton*, 561 F.3d at 714.

**4. Essay Contest**: Even if the ABA didn't have all these express contracts, its scholarship would still be a contract because it's a contest. As the ABA admits, "'[a] bargained-for exchange

exists if one party's promise induces the other party's promise *or performance*.'" MTD 10 (emphasis added). A contest satisfies that definition: The sponsor induces the applicant's creation of a submission—performance—by promising a shot at the prize. *See Harlem-Irving Realty, Inc. v. Alesi*, 425 N.E.2d 1354, 1357 (Ill. App. 1981); *Fearless*, 2023 WL 6295121, at *5. Here, too, the ABA offers a chance at $15,000 in exchange for the applicant assembling an application package, including drafting an original essay. Am.-Compl. ¶11, ¶15(a). The ABA agrees that contests are normally contracts. *See* MTD 13. Though it says its scholarship requires no "performance," MTD 13, the ABA requires applicants to prepare a lengthy submission and draft a lengthy original essay, Am.-Compl. ¶15(a). That's performance, regardless whether the ABA thinks these submissions have economic value. *E.g.*, *Brooklyn Daily Eagle v. Voorhies*, 181 F. 579, 581-82 (C.C.E.D.N.Y. 1910) (submitting names and essays); *Stand Strong USA v. Harwich Enters.*, 2020 WL 13267387, at *4 (S.D. Fla. Dec. 28) (getting most votes on defendant's website); *Cobaugh v. Klick-Lewis*, 561 A.2d 1248, 1249-50 (Pa. Super. 1989) (hitting hole-in-one in golf contest). And these submissions *are* valuable to the ABA, which is why it demands the right to own and use them. Am.-Compl. ¶15(c), ¶16.

### III. The ABA's First Amendment defense fails.

Perhaps least persuasive is the ABA's last argument—that the application of "antidiscrimination laws" like §1981 to its scholarship would violate the "First Amendment." MTD 13. This defense fails for three main reasons. This Court cannot accept it because the United States has not yet been notified or given the chance to intervene to defend the constitutionality of §1981. The ABA's defense is wrong under decades of precedent. And its defense is premature.

**1.** Though this Court can freely *reject* constitutional challenges to federal statutes, it cannot *accept* those challenges in cases between private parties without first notifying the United States

and giving it 60 days to intervene. Under Rule 5.1, a party who "draw[s] into question the consti-

tutionality of a federal … statute must promptly" notify the "Attorney General." Fed. R. Civ. P.

5.1(a). Even if the party fails, the "court must, under 28 U.S.C. §2403, certify" the constitutional

challenge and give the United States at least "60 days" to intervene. Fed. R. Civ. P. 5.1(b)-(c); *see*

*Bd. of Regents v. Phoenix Software Int'l*, 2008 WL 3842920, at *1 (W.D. Wis. Aug. 18) (court has

"independent duty to certify"). Until the 60 days expire, the court "may reject the constitutional

challenge, but may not enter a final judgment holding the statute unconstitutional." Fed. R. Civ. P.

5.1(c); *e.g.*, *Satkar Hosp. v. Cook Cnty. Bd. of Rev.*, 2011 WL 4431029, at *2 (N.D. Ill. Sept. 21).

The ABA's motion draws into question the constitutionality of §1981, *see League of*

*Women Voters of Ohio v. LaRose*, 741 F. Supp. 3d 694, 720 (N.D. Ohio 2024), yet the ABA refuses

to notify the United States. If the ABA thinks it has no such duty because it challenges §1981's

constitutionality only as applied to its conduct, not on its face, then the ABA would be wrong.

Rule 5.1 applies when a party raises a "constitutional question"; it does not ask *how* broadly a

party "draw[s] into question the constitutionality" of a statute. Fed. R. Civ. P. 5.1(a); *accord* 28

U.S.C. §2403(b) ("question of constitutionality"). So courts can and do certify as-applied chal-

lenges under the rule. *E.g.*, *Okla. ex rel. Edmondson v. Pope*, 516 F.3d 1214, 1215-16 (10th Cir.

2008); *Mockeridge v. Alcona Cnty.*, 665 F. Supp. 3d 857, 860-62 (E.D. Mich. 2023). Excluding

as-applied challenges would undermine the rule's purpose of letting the government decide

whether "any" and "every" challenge to the constitutionality of statutes is worth its intervention,

4B Fed. Prac. & Proc. Civ. §1154 (4th ed.), especially since the law draws no clear lines between

facial and as-applied challenges, *see Bucklew v. Precythe*, 587 U.S. 119, 138-39 (2019). Because

the United States has not been notified or given 60 days to intervene, this Court cannot accept the

ABA's constitutional challenge to §1981. *See, e.g.*, *Giannavola v. Lee*, 2025 WL 1932020, at *6

(W.D.N.Y. July 14); *WMATA v. Loc. 689, Amalgamated Transit Union*, 818 F. Supp. 2d 888, 906 n.19 (D. Md. 2011); *Pyle v. Woods*, 2015 WL 5794345, at *2 (D. Utah Oct. 2), *aff'd*, 874 F.3d 1257 (10th Cir. 2017).

**2.** This Court doesn't need the United States to reject the ABA's First Amendment attack, since the ABA's argument is foreclosed by precedent. The First Amendment does not protect conduct, and "§1981" is a "permissible content-neutral regulation of conduct." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993). Section 1981 bans racial discrimination in contracting, conduct on which "the Constitution places no value." *Runyon v. McCrary*, 427 U.S. 160, 176 (1976) (cleaned up). Though §1981's regulation of conduct sometimes burdens speech—by, for example, requiring an employer to remove a "Whites Only" provision in a contract—those incidental burdens do not trigger the First Amendment. *R.A.V. v. St. Paul*, 505 U.S. 377, 389-90 (1992). Section 1981, after all, does not prevent individuals from *advocating* for racial discrimination; it prohibits only "the very act of discriminating on the basis of race" in contracting, which "the Supreme Court has clearly held that the First Amendment does *not* protect." *Fearless*, 103 F.4th at 777-78.

The ABA cannot rely on the rare cases where the application of an antidiscrimination law compels someone's speech. *Cf.* MTD 13-14. The ABA is not engaged in "'pure speech,'" like creating a website, conducting a beauty pageant, or casting a TV show. *Fearless*, 103 F.4th at 779. The ABA isn't even "subsidiz[ing] speech," *id.* at 779 n.7; its money pays the routine expenses of individual law students. Instead, the ABA is refusing to contract with one race and claiming that this "*very act of discrimination itself*" is expressive. *Fearless*, 103 F.4th at 779. A long line of cases, including the compelled-speech cases that the ABA cites, reject that argument. *Id.* at 778-79. If the argument worked, then "*every* act of race discrimination" would be shielded by the First

Amendment. *Id.* at 779. And on the ABA's "theory, the more blatant and rampant the discrimination, the clearer the message: To take just one particularly offensive example, surely a business owner who summarily fires all his black employees while retaining all the white ones has at the very least telegraphed his perspective on racial equality." *Id.* The ABA's "position—that the First Amendment protects a similarly categorical race-based exclusion—risks sowing the seeds of anti-discrimination law's demise." *Id.*

Even less persuasive is the ABA's reliance on *Saadeh v. New Jersey State Bar Association*, a decision from an intermediate state court that is still pending before the state supreme court. *Saadeh* holds that the First Amendment's "freedom of association" protects a private bar association's right to set aside leadership positions for certain "demographic groups." 2024 WL 5182533, *10 (N.J. App. Dec. 20). That holding cannot be squared with *Hishon v. King & Spalding*, which rejects the notion that private discrimination by legal organizations "'may be characterized as a form of exercising freedom of association protected by the First Amendment.'" 467 U.S. 69, 78 (1984). The ABA must agree that *Saadeh*'s reasoning is shaky, since it's repealing the same race-based leadership practices that *Saadeh* approved. *See American Bar Association Considers Ending Diversity Requirements for Board Seats*, Reuters (Aug. 4, 2025), archive.is/d1gvL.

Even if *Saadeh* were correct, its holding cannot help the ABA here. The ABA does not argue that its "'freedom of expressive association'" would be infringed by "'the forced inclusion of an unwanted person'" that "'affects in a significant way [its] ability to advocate public or private viewpoints.'" *Saadeh*, 2024 WL 5182533, at *8 (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000)). The ABA does not exclude from its membership white lawyers or those who disagree with its views on diversity. Am.-Compl. ¶22. Its scholarship funds no expression and requires no fealty to the ABA's views on diversity. ¶22. And the ABA agrees that opening its programs to

people of all races does not affect its advocacy on diversity. ¶¶23(c)-(d). So even if the ABA had claimed an infringement on its right to expressive association, that defense would have failed because the ABA could not show that the "application of [§1981] will change the content or impact of the organization's speech." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984).

**3.** At a minimum, this Court should reject the ABA's First Amendment defense as premature. The ABA bears the burden to show that its conduct is protected by the First Amendment. *Doe v. City of Lafayette*, 377 F.3d 757, 764 (7th Cir. 2004). For its scholarship to qualify as "expressive conduct," MTD 14-15, the ABA must prove both that it subjectively "inten[ded]" to express a message and that its message would be objectively "understood" by reasonable observers. *United States v. Hayward*, 6 F.3d 1241, 1249 (7th Cir. 1993). Even then, §1981 would violate the First Amendment only if it fails "*O'Brien*'s intermediate standard of scrutiny." *Tagami v. Chicago*, 875 F.3d 375, 379 (7th Cir. 2017) (citing *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). Because the ABA's "First Amendment argument more appropriately represents an affirmative defense," dismissal is premature unless "the factual allegations in the complaint unambiguously establish all the elements of the defense." *Siegel v. Zoominfo Techs.*, 2021 WL 4306148, at *4 (N.D. Ill. Sept. 22). The complaint establishes none of what the ABA needs to make out this defense.

The complaint does not establish that, by barring nonwhites from its scholarship, the ABA had the "subjective intent" to communicate a message. *Jones v. Schneiderman*, 974 F. Supp. 2d 322, 333 (S.D.N.Y. 2013). The complaint alleges the opposite. Through the life of the scholarship, the ABA denied in its briefs, policies, and statements that racial discrimination itself communicates a message. Am.-Compl. ¶23. Though the ABA now says its position lost at "the Supreme Court," MTD 15, the Supreme Court's decisions have nothing to do with the ABA's *intent*, and the ABA has maintained the same position many times after the Supreme Court's decisions. Am.-Compl.

18

¶23. Plus the Supreme Court *agreed* with the ABA on the key point: The First Amendment "does *not* protect status-based discrimination unrelated to expression." *303 Creative v. Elenis*, 600 U.S. 570, 595 n.3 (2023).

The ABA cannot contradict the complaint's allegations about its subjective intent by pointing to statements on its website about "diversity." *Cf.* MTD 2 n.2, 14 n.7. Per the complaint, those statements prove the ABA does *not* believe that eliminating racial bars changes the ABA's speech. Am.-Compl. ¶¶23(a)-(d). This Court must read the ABA's statements like the Alliance does at this stage, not use outside websites to "'draw … inferences unfavorable'" to the Alliance or take "'judicial notice'" of facts that the Alliance disputes. *Bahena v. Aahil Corp.*, 2022 WL 4609620, at *3 (N.D. Ill. Sept. 30). Because the complaint does not "establish" the ABA's subjective intent to express a message, the ABA's First Amendment defense cannot succeed at this stage. *7241 W. 100th Place Corp. v. Bridgeview*, 2014 WL 517961, at *3 (N.D. Ill. Feb. 6); *accord Nat'l Experiential v. Chicago*, 2024 WL 3757066, at *16 (N.D. Ill. Aug. 9) (refusing to resolve First Amendment question at pleading stage because intent was disputed); *cf. Saadeh*, 2024 WL 5182533, at *10 (resolving the bar association's "sincerity" at summary judgment based on "the record").

Subjective intent aside, the complaint also does not establish that the ABA's conduct objectively communicates a message. Giving or denying someone money is not inherently expressive. *The Bail Project, Inc. v. Comm'r, Ind. Dep't of Ins.*, 76 F.4th 569, 577 (7th Cir. 2023). The ABA does not explain why it is, instead pointing only to statements about the scholarship "published on its website." MTD 14. But conduct is, by definition, not expressive if it needs "the aid of additional speech" to communicate a message. *Bail Project*, 76 F.4th at 575; *accord Tagami*, 875 F.3d at 377-78; *Rumsfeld v. FAIR*, 547 U.S. 47, 66 (2006). Nor does the ABA's scholarship express any message coherently. The scholarship is open to Asians even though—by the ABA's

19

lights—Asians are "overrepresented" in law. Am.-Compl. ¶60. And the ABA's public statements deny any necessary connection between racial exclusion and support for diversity. ¶¶23(c)-(d). Because "the amended complaint" does not "offer any facts from which it might reasonably be inferred that onlookers would have readily understood" the ABA's message, the ABA cannot prevail on a First Amendment defense at this stage. *Tagami*, 875 F.3d at 378.

Finally, the complaint does not establish that §1981 fails intermediate scrutiny. The ABA cannot rely on strict-scrutiny cases like *303 Creative*, since this case does not involve the forced alteration of "'pure speech.'" *Fearless*, 103 F.4th at 779. The ABA at most argues "expressive conduct," MTD 13, so *O'Brien*'s intermediate-scrutiny test applies. The ABA's motion never acknowledges *O'Brien*, let alone makes arguments why §1981 fails that standard—thus forfeiting the point at this stage. And the complaint, if anything, alleges that §1981 would survive *O'Brien*. Section 1981 serves what the ABA has called the compelling interest in "'[e]qual dignity.'" Am.-Compl. ¶58. And by barring only the act of racial discrimination in contracting itself, §1981 leaves the ABA free to *say* whatever it wants. ¶¶23(c)-(d); *see Rita v. Tinley Park*, 2024 WL 4346548, at *7 (N.D. Ill. Sept. 30). So even if the ABA had made arguments under intermediate scrutiny, those arguments could not be a reason to dismiss the complaint. *See, e.g.*, *Bruni v. Pittsburgh*, 824 F.3d 353, 371-73 (3d Cir. 2016) (courts cannot conduct the "rigorous and fact-intensive nature of intermediate scrutiny's narrow-tailoring analysis" at the pleading stage); *Foxxxy Ladyz Adult World v. Vill. of Dix*, 779 F.3d 706, 717 (7th Cir. 2015) (same); *Sullivan-Knoff v. Chicago*, 348 F. Supp. 3d 787, 793-94 (N.D. Ill. 2018) (same).

## CONCLUSION

For all these reasons, this Court should deny the motion to dismiss.

Dated: August 25, 2025                    Respectfully submitted,


                                          /s/ Cameron T. Norris
Adam K. Mortara**                         Thomas R. McCarthy*
  (TN Bar No. 40089)            Cameron T. Norris**
LAWFAIR LLC                               Julius Kairey*
40 Burton Hills Blvd., Ste. 200           R. Gabriel Anderson*
Nashville, TN 37215                       CONSOVOY MCCARTHY PLLC
(773) 750-7154                            1600 Wilson Blvd., Ste. 700
mortara@lawfairllc.com                    Arlington, VA 22209
                                          (703) 243-9423
                                          tom@consovoymccarthy.com
                                          cam@consovoymccarthy.com
                                          julius@consovoymccarthy.com
                                          gabe@consovoymccarthy.com

                                          *pro hac vice
                                          **member of N.D. Ill.

## CERTIFICATE OF SERVICE

On August 25, 2025, I e-filed this document with the Court, which automatically emailed everyone requiring service.

                                          /s/ Cameron T. Norris
                                          Counsel for Plaintiff

21